### WARNER v. CITY OF NEW ORLEANS.

(Circuit Court of Appeals, Fifth Circuit. June 10, 1897.)

MUNICIPAL CORPORATIONS—ESTOPPEL—VIOLATION OF CONTRACT.

A city which voluntarily made a purchase of property with which to complete drainage improvements under authority conferred by an act of the legislature, and issued in payment therefor warrants on the drainage fund, a part of which it had collected, and the remainder of which it contracted to collect, but afterwards abandoned the work, and thus rendered the drainage assessments invalid and uncollectible, and otherwise obstructed their collection, is estopped to set up, in defense to an action against it on the warrants, that it had, previous to their issuance, discharged claims against the drainage fund in excess of the amount collected.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

On May 14, 1895, the questions arising in this case were by this court certified to the supreme court for its instructions thereon. The certificate, which fully states the facts, was in full as follows:

"The complainant, a citizen of the state of New York, filed his bill in said circuit court against the city of New Orleans, alleging substantially as follows: By act approved March 18, 1858, the legislature of the state of Louisiana undertook to provide for draining and reclaiming portions of the parishes of Orleans and Jefferson. The work was to be accomplished through boards of drainage commissioners appointed for each of the three districts into which the territory was divided. The funds to pay for work were to be raised as follows: Whenever the several boards were prepared to drain their districts, they were required to cause a plan to be made of the proposed work, designating its subdivisions and the names of the proprietors of the land, etc. This plan was to be filed in the mortgage office, of which notice was required to be published once a week for four consecutive weeks. At the expiration of the notice the boards were to apply to a court specified in the act, which was required to decree that the district was subject to a first mortgage lien and privilege for such an amount as might be assessed upon the property. After the tax had been levied the court was authorized to render judgment against the several property owners for the amount due by them. By another act, approved March 17, 1859, the boards were authorized to issue bonds to the extent of $300,000 for each district for the purpose of carrying on the work, redeemable out of drainage taxes. By an act approved March 1, 1861, the boards were authorized to apportion the amount which each taxpayer should be required to pay yearly to meet the annual interest and installments due on the bonds. Other and more stringent provisions for the collection of these taxes were also made in the act, such as authorizing judgments to be rendered against the taxpayer and his property, and the issuance of execution as in ordinary cases. The boards of commissioners for the First and Second districts filed plans of the work they proposed to do, and obtained judgments decreeing the lands in those districts to be subject to liens and privileges for the proposed work. They levied assessments payable in installments, and obtained judgments for the amount of the rolls, and some money was collected thereon. By Act 30 of 1871 the several boards of drainage commissioners were abolished, and the work of drainage was transferred to the Mississippi & Mexican Gulf Ship-Canal Company, but the board of administrators of the city of New Orleans for all other purposes was made their successor, and was subrogated to all moneys, assessments, and other assets then belonging to them, and was required to collect such tax and assessments, and to make and collect an additional tax of two mills per superficial foot on all lands where no tax had been levied for drainage purposes, and that all collections from these sources be placed to the credit of said Mississippi & Mexican Gulf Ship-Canal Company, and held as a fund to be applied only to the drainage of the city of New Orleans and Carrollton. By the eighth section of the act it was made the duty of the administrator of accounts to draw a warrant on the administrator of finance against this fund for the payment of amounts due for all work done by that company. The board of administrators entered on the duties imposed on them under this act, procured the mortgages and liens to be decreed, assessments to be levied, and judgments to be rendered for the taxes assessed in the Third and Fourth drainage districts. The whole amount of assessments that came under their administration was $1,699,637.37, and of this $1,003,342.28 was assessed against individuals and $696,394.30 against the city of New Orleans on the area of her streets and squares. The work was continued under this act until 1876 by Warner Van Norden, who had become transferee of the said Mississippi & Mexican Gulf Ship-Canal Company. He excavated some 5,000,000 cubic yards of earth, and completed two-thirds of the plan of drainage, when Act No. 16, of February 24, 1876, was passed for the purpose of authorizing the city of New Orleans to assume exclusive control of all drainage work, and, if she desired it or deemed it advisable, to purchase from said canal company and its transferee, Van Norden, all the tools, boats, and apparatus appertaining to drainage work and the franchise of the company, upon an appraisement to be made by appraisers to be appointed by the city council. The act further provided that the price should be paid by the city

of New Orleans in drainage warrants in the same form and manner as those theretofore issued under Act 30 of 1871. Pursuant to this act the city council caused the property to be appraised. The valuation was fixed at $300,000, and on the 7th of June, 1876, a formal act of sale and transfer was executed between Warner Van Norden and said canal company and said city of New Orleans, by which the former made a transfer of the drainage plant and franchise for said amount, payable in drainage warrants, and the city covenanted 'not to obstruct or impede, but, on the contrary, to facilitate, by all lawful means, the collection of drainage assessments, as provided by law, until said warrants have been fully paid, it being well understood and agreed by and between said parties thereto that collection of drainage tax assessments should not be diverted from the liquidation of said warrants and expenses under any pretext whatsoever until the full and final payment of the same.'

"Up to the date of this sale the city had collected on the assessments against private property $229,922.89, leaving $1,469,714.47 outstanding and uncollected, of which amount the city owed $696,394.30, as assessed against the streets and squares. The drainage warrants issued prior to December 31, 1874, had been paid or taken up before said sale by the issue of bonds of the 'drainage series' to the amount of $1,672,105.21 under authority of Act 73, approved April 26, 1872. The thirteenth section of this act, after providing for the issue of said bonds, further provided that 'all taxes collected for drainage and not required for payment of drainage warrants shall be devoted to the purchase from the lowest bidder of bonds issued for drainage.' Complainant sues on three of the drainage warrants, of $2,000 each, given for the purchase price of the drainage plant and franchise sold to the city of New Orleans as above set forth. The bill, after setting out the foregoing state of facts in more amplified form, avers: (1) That the city of New Orleans, after she became possessed of the drainage franchise, sold some of the drainage machinery, and suffered the rest to become rotten and valueless, and abandoned all work of drainage; that by reason of the noncompletion of the drainage system the supreme court of Louisiana decided the drainage taxes could not be collected, inasmuch as no benefit had been conferred on the property. (2) That the city by various means impeded the collection of drainage taxes, and by her conduct, ordinances, and proclamations encouraged and induced people to refuse to pay the assessments, by reason whereof the drainage assessments due by private persons have become valueless. (3) That the city will plead that she has been discharged from all liability to account for the drainage taxes she has collected, or which she ought to have collected but has wasted, as well as her own indebtedness, by the issuance and delivery, between May 10, 1872, and December 31, 1874, of drainage bonds under authority of Act 73 of 1872. (4) That the city had never claimed, prior to the purchase of said property and franchise, that the issuance of said bonds operated as such discharge, and made no such plea, save in the case of James W. Peake against the city of New Orleans, filed March 19, 1888. (5) That the act of 1876 was an authority for the city to make said purchase as well as a legislative recognition that said drainage fund had not been discharged by the issue of said bonds, and was an appropriation and dedication of so much thereof as was necessary to pay the purchase warrants without offset or impairment. (6) That the contract of sale was entered into by Van Norden in consideration of the provisions of said act of 1876 and its effects on his rights and remedies; that neither at the time of entering into the contract of sale nor when the warrants were delivered in discharge of the price did the city disclose to him that she would claim the issuance of said bonds as a discharge of her liability to account for and apply the drainage taxes, including those due by herself, to the payment of said purchase warrants; that he was ignorant that the city would claim such discharge, and would not have entered into said contract if he had been advised that any such claim would be made as aforesaid; that Van Norden has expressly, and by a writing annexed to and made part of the bill, subrogated complainant to all his rights and remedies growing out of said sale. The complainant therefore avers that the city is estopped in equity and good conscience from pleading or maintaining such defense. The bill closes with a prayer for an accounting of said drainage fund, and especially that the amount due by the city as assessee of the streets and squares, be decreed to be a trust fund in the hands of the city, applicable to the payment of said drainage warrants.

"Defendant demurred to the bill, especially asserting that the decision in the case of Peake v. City of New Orleans, reported in 139 U. S. 342, 11 Sup. Ct. 541, is decisive of the issues in this case. The demurrer having been sustained by the circuit court, the complainant has removed the case to this court for review, assigning, among others, error in this respect. And it appearing that the suit of said Peake was based on drainage warrants given for work, all dated July 9, 1875, complainant insists that they were issued while the city was an involuntary and noncontractual trustee, and in this respect differ from those involved in this case, which were issued by the city as a voluntary and contractual trustee, under the permissive authority of the legislature, and that, both on principle and owing to the estoppel pleaded in the bill, his rights are not affected by said decision.

"The case having been argued in this court on the errors assigned, and this court desiring the instruction of the honorable the supreme court for the proper decision of the questions arising herein touching the matter of estoppel aforesaid, and the application of the decision of the supreme court to the issues involved in this suit, it is ordered that the following questions and propositions of law be certified to the supreme court in accordance with the provisions of section 6 of the act entitled 'An act to establish circuit courts of appeal and define and regulate in certain cases the jurisdiction of the courts of the United States, and for other purposes,' approved March 3, 1891, to wit:

"First. Is the city of New Orleans, under the warranties, express and implied, contained in the contract of sale of June 7, 1876, by which she acquired the property and franchise from Warner Van Norden, and under the averments of the bill, estopped from pleading against the complainant the issuance of bonds to retire $1,672,105.21 of drainage warrants, issued prior to said sale, as a discharge of her obligation to account for drainage funds collected on private property, and as a discharge from her own liability to that fund as assessee of the streets and squares?

"Second. Should the decision in the case of Peake v. City of New Orleans, 139 U. S. 342, 11 Sup. Ct. 541, be held to apply to the facts of this case and operate to defeat the complainant's action?

"It is further ordered that a copy of the printed record and the several acts of the legislature, together with copies of the briefs on file in this court, be sent to the honorable the supreme court with the transcript certifying the aforesaid questions."

The opinion of the supreme court in respect to the questions thus certified was delivered by Mr. Justice Brewer in the following language:

"We had occasion in the recent case of Cross v. Evans, 17 Sup. Ct. 733, to comment on the practice of certifying questions in such manner as to practically submit the entire case to this court for consideration. In addition to what was said in the opinion then filed, it may be proper to observe that the purpose of the act of 1891, creating the courts of appeal, was to vest final jurisdiction as to certain classes of cases in the courts then created, and this in order that the docket of this court might be relieved, and it be enabled with more promptness to dispose of the cases directly coming to it. In order to guard against any injurious results which might flow from having nine appellate courts, acting independently of each other, power was given to this court to bring before it for decision by certiorari any case pending in either of those courts. In that way it was believed that uniformity of ruling might be secured, as well as the disposition of cases whose gravity and importance rendered the action of the tribunal of last resort peculiarly desirable; but the power of determining what cases should be so brought up was vested in this court, and it was not intended to give to any one of the courts of appeal the right to avoid the responsibility cast upon it by statute by transmitting any case it saw fit to this court for decision. If such practice were tolerated, it is easy to be perceived that the purpose of the act might be defeated, and the courts of appeal, by transferring cases here, not only relieve themselves of burden, but also crowd upon this court the very cases which it was the intent of congress they should finally determine. It is true, power was given to the courts of appeal to certify questions, but it is only 'questions or propositions of law' which they

are authorized to certify. And such questions must be, as held in the case just cited, 'distinct questions or propositions of law, unmixed with questions of fact or of mixed law and fact.' It is not always easy to draw the line, for, in order to present a distinct question of law, it may sometimes be necessary to present many facts upon which that question is based. But care must always be taken that, under the guise of certifying questions, the courts of appeal do not transmit the whole case to us for consideration. Here, in addition to the long preliminary statement of facts, the court ordered up the entire record, and counsel, in their briefs, assuming that the whole case is before us, have entered into a discussion of many questions, such as the effect of certain limitations in the constitution of Louisiana, which may have been in the case as it was presented to the court of appeals, but cannot be found in any distinct question of law certified to us.

"With these preliminary observations, we pass to the consideration of the questions certified, or so much thereof as are distinct questions of law. The first question is one of estoppel. In order to a full understanding of it a brief review of the facts is essential, and for these facts we look simply to the statement prepared by the court of appeals, and not to the bill and exhibits, copies of which it ordered to be sent to this court. From that statement it appears that in 1858 the state of Louisiana undertook the work of draining and reclaiming portions of the parishes of Orleans and Jefferson; that this work was to be done under the direction and control of boards of drainage commissioners appointed for the several districts into which the territory was divided. Provision was made for assessing the cost and expenses of the work upon the property benefited. The work continued under these auspices until 1871, when, by an act of the legislature, the boards of drainage commissioners were abolished, and the work of drainage transferred to a canal company. But the duty of collecting the assessments was imposed upon the board of administrators of the city of New Orleans, and the administrator of accounts was directed to draw warrants on the administrator of finance against the drainage fund for the payments of amounts due for the work. Warner Van Norden became the transferee of the canal company, and completed about two-thirds of the work prior to February 24, 1876, when an act was passed authorizing the city of New Orleans to assume exclusive control of the drainage work, and, if it desired, to purchase from the canal company and its transferee all the boats, tools, and apparatus pertaining to the work, and also the franchise of the company. This act further provided that the price should be paid by the city in drainage warrants in the same form and manner as those theretofore issued. The whole amount of assessments was $1,699,637.37. Of this, $1,003,342.28 was assessed against individuals, and the balance against the city of New Orleans on the area of its streets and squares. Of the assessment against private property the city had up to this time collected $229,922.89. The drainage warrants issued prior to December 31, 1874, had been paid or taken up before this act of 1876 by the issue of city bonds, to the amount of $1,672,105.21, under authority of an act approved April 26, 1872. The city elected to make the purchase of the property of the canal company and its transferee. It was appraised at $300,000, and on June 7, 1876, a formal sale and transfer was executed by the company and its transferee to the city for the amount named, payable in drainage warrants, and the city covenanted 'not to obstruct or impede, but, on the contrary, to facilitate, by all lawful means, the collection of drainage assessments, as provided by law, until said warrants have been fully paid, it being well understood and agreed by and between said parties thereto that collection of drainage tax assessments should not be diverted from the liquidation of said warrants and expenses under any pretext whatsoever until the full and final payment of the same.'

"It will be seen that the bonds issued by the city more than covered in amount the assessments against its streets and public grounds and the amount it had collected from private property, and all this had taken place prior to the purchase of the property from the canal company and its transferee. Now, after the city had assumed exclusive control of the work, after it had voluntarily purchased from the canal company and its transferee their property, and had given these warrants, payable out of the drainage fund, it sold some of the drainage machinery, suffered the rest to become rotten and valueless, and

abandoned the work of drainage, so that by reason of the noncompletion of the drainage system, as held by the supreme court of the state, drainage taxes could not be collected; inasmuch as no benefit had been conferred upon the property. Not only that; it by various means impeded the collection of the taxes, and by conduct, ordinances, and proclamations encouraged and induced the people to refuse to pay the assessments, whereby those due by private persons became valueless.

"And now the question is whether the city is not estopped to plead, in defense of liability on these drainage warrants, the fact of the prior issue of bonds to a larger amount than that assessed against the areas of its streets and squares and collected from private property. We think this question must be answered in the affirmative. The city, in respect to the purchase of this property from the canal company and its transferee, and in the obligations assumed by the warrants issued, acted voluntarily. It was not, in reference to these matters, as it was to those considered in Peake v. City of New Orleans, 139 U. S. 342, 11 Sup. Ct. 541, a compulsory trustee, but a voluntary contractor; and the proposition which we affirm is that one who purchases property, contracting to pay for it out of a particular fund, and issues warrants therefor payable out of that fund,—a fund yet partially to be created, and created by the performance by him of a statutory duty,—cannot deliberately abandon that duty, take active steps to prevent the further creation of the fund, and then, there being nothing in the fund, plead, in defense to a liability on the warrants drawn on that fund, that it had, prior to the purchase, paid off obligations theretofore created against the fund. Whatever equity may do in setting off against all warrants drawn before this purchase from the canal company and its transferee the bonds issued by the city (and in respect to that matter we can only refer to Peake v. City of New Orleans, supra), it by no means follows that the city can draw new warrants on the fund in payment for property which it voluntarily purchases, and then abandon the work by which alone the fund could be made good, resort to means within its power to prevent any payments of assessments into that fund, and thus, after violating its contract promise not to obstruct or impede, but on the contrary to facilitate, by all lawful means, the collection of the assessments, plead its prior issue of bonds as a reason for evading any liability upon the warrants. One who purchases property, and pays for it in warrants drawn upon a particular fund, the creation of which depends largely on his own action, is under an implied obligation to do whatever is reasonable and fair to make that fund good. He cannot certainly so act as to prevent the fund being made good, and then say to his vendor, 'You must look to the fund, and not to me.' We are clear in the opinion, therefore, that the first question must be answered in the affirmative.

"With reference to the second, we are of the opinion that it does not come within the rule in respect to certifying distinct questions of law. It invites an inquiry into all the matters considered in the case of Peake v. City of New Orleans (and there were many), and asks whether the matters there decided apply to the facts of this case and operate to defeat the plaintiff's action. In other words, the question puts the facts of the one case over against the facts of the other, and asks us to search the record in each to see whether the one case operates to bar the other. Surely that is practically submitting the whole case, instead of certifying a distinct question of law. Our decision, therefore, is that the first question must be answered in the affirmative, and the second we decline to answer.

"Ordered accordingly."

Richard De Gray, John D. Rouse, and William Grant, for appellants.

A. E. O. Sullivan and Branch K. Miller, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PER CURIAM. The city of New Orleans, under warranties express and implied contained in the contract of sale of June 7, 1876,

by which she acquired the property and franchise from Warner Van Norden, and under the averments of the bill, is estopped from pleading against the complainant below, and appellant here, the issuance of bonds to retire $1,672,105.21 of drainage warrants issued prior to said sale as a discharge of her obligation to account for drainage funds collected on private property, and as a discharge from her own liability to that fund as assessee of the streets and squares. Warner v. City of New Orleans, 167 U. S. 467, 17 Sup. Ct. 892. On the case made by the bill of complaint the decision of the supreme court in the case of Peake v. City of New Orleans, 139 U. S. 342, 11 Sup. Ct. 541, does not necessarily apply to the facts of this case, nor operate to defeat the complainant's action. It follows that the circuit court erred in sustaining the demurrer to the complainant's bill. The decree of the circuit court is reversed, and the cause is remanded, with instructions to overrule the demurrer to the complainant's bill, and thereafter proceed as equity and good conscience may require.