(No. 12779.—Judgment affirmed.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* The Quincy Railway Company, Appellee, *vs.* THE CITY OF QUINCY, Appellant.

*Opinion filed December 17, 1919.*

1. PUBLIC UTILITIES—*power to regulate rates for public utilities is inherent in the State.* The power to fix and regulate rates for public utilities is inherent in the State and no express grant is necessary to vest it in the legislature.

2. SAME—*Public Utilities Commission may change street railway rates fixed in ordinance.* Although a street railway company has accepted a franchise ordinance fixing the rates for street railway service for a number of years, the Public Utilities Commission has authority to make such changes in the rates before the expiration of the time provided in the ordinance as a proper exercise of the police power requires.

3. CONSTITUTIONAL LAW—*constitution does not preclude change of street car fares by State.* Section 4 of article 11 of the constitution, providing that the General Assembly shall not grant the right to construct or operate a street railroad on the streets of any city, town or incorporated village without the consent of the local authorities, does not preclude the State, in the exercise of its police power, from changing the rate for street car fares fixed by an ordinance.

4. SAME—*questions concerning municipalities are determined by decisions of State Supreme Court.* Questions as to the construction of charter provisions and as to the validity, scope and effect of ordinances and proceedings of municipalities under the State law are State questions, which are determined by the decisions of the State Supreme Court, and are not Federal questions.

5. POLICE POWER—*police power has no fixed limits.* The police power cannot be exactly defined or circumscribed by fixed limits but it is considered as being capable of development and modification within certain limits, so that the powers of governmental control may be adequate to meet changing social, economic and political conditions.

6. SAME—*neither legislature nor municipal corporation can divest itself of police power.* The police power possessed by the State and by a municipality is a continuing power, and neither a legislative body nor a municipal corporation can divest itself, by contract or otherwise, of the right to exercise such power when the public interests require its exercise.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

CHARLES L. BARTLETT, JOHN F. GARNER, and JOHN T. INGHRAM, for appellant.

EDWARD J. BRUNDAGE, Attorney General, WILLIAM E. TRAUTMAN, ALBERT D. RODENBERG, and MATTHEW MILLS, for the State Public Utilities Commission.

GREEN & PALMER, (HENRY I. GREEN, and M. E. PEMBERTON, of counsel,) for the Quincy Railway Company.

Per CURIAM: This is an appeal by the city of Quincy from the order of the Sangamon county circuit court affirming an order of the Public Utilities Commission establishing and making effective, among other things, advanced rates for street car service by the Quincy Railway Company, in that city.

The hearing before the commission involved many issues concerning the operation of public utilities in cities other than Quincy and as to companies other than appellee. With these other issues the city of Quincy was in no way concerned, and counsel have, therefore, for the purpose of this appeal, stipulated the facts upon which the appeal was taken, eliminating immaterial and impertinent questions not here involved. Among other questions was one as to the necessity for increasing street railway fares above those provided by the city ordinance. It is conceded in the record that the findings of the Public Utilities Commission are correct that the Quincy Railway Company must charge and collect fares in excess of those prescribed by said ordinance in order to meet its increased operating expenses. During the year 1912 the Quincy Railway Company accepted a so-called franchise ordinance from said city, which fixed the rates for street railway service for a period of twenty years. The only change made by the

Public Utilities Commission in the rates was to abolish the sale of six tickets for twenty-five cents and the sale of reduced fare tickets to school children and to establish a flat five-cent fare. The only question involved on this hearing is whether the Public Utilities Commission has authority, power and jurisdiction to approve and authorize street railway fares in said city which are in excess of the fares prescribed in the ordinance passed in 1912, under which said city granted the Quincy Railway Company the right to operate its railroad upon the public streets of that city.

The power to fix and regulate rates as to public utilities was at common law one inherent in the State. (*Munn* v. *People,* 69 Ill. 80.) No express grant was necessary to vest it in the legislature. "No proposition is better settled than that a State constitution is a limitation upon the powers of the legislature, and that the legislature possesses every power not delegated to some other department or expressly denied to it by the constitution." (*Field* v. *People,* 2 Scam. 79.) This doctrine has been repeatedly approved by this court since that early decision. Cities, villages and other municipalities and *quasi* municipal corporations are created under the authority of the legislature, to better accomplish the purposes of local government. These and all other local municipalities which are authorized by the legislature derive their existence and all their powers from the legislature creating them. "There is, therefore, no such thing as an inherent power in any municipality which is created by legislative enactment." (*City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264.) It must be conceded that the municipality can do nothing the State cannot authorize it to do; that all the power a municipality has is created by and must emanate from the State creating it. "What powers, then, reside in the State? It has all power necessary for the protection of the property, health and comfort of the public, and that power has been so frequently defined by this court it is not necessary to re-state it. Its power in

this respect the State may delegate to local municipalities and in such measure as may be deemed desirable for the best interests of the public, and the State may resume it again when deemed expedient." *Harmon* v. *City of Chicago,* 110 Ill. 400.

The chief contention here, however, is whether the State still retains this power after having granted to the municipality the right to regulate and control by ordinance the operation of street railways in the city. After an ordinance has been passed by the city under this power and accepted by the railway company, can the State thereafter override or change any of the provisions of said ordinance? It is strenuously insisted by counsel for appellant that to permit this is contrary to the provisions of the Federal and State constitutions as to due process of law. In discussing this question the United States Supreme Court has recently stated: "It is established by repeated decisions of this court that neither of these provisions of the Federal constitution [the contract clause and due process clause] has the effect of overriding the power of the State to establish all regulations reasonably necessary to secure the health, safety or general welfare of the community; that this power can neither be abdicated nor bargained away and is inalienable even by express grant, and that all contract and property rights are held subject to its fair exercise." (*Chicago and Alton Railroad Co.* v. *Tranbarger,* 238 U. S. 67.) The regulation of public utilities is within the exercise of the police power of the State. This power may be exercised directly by the legislature or indirectly by conferring the power upon the municipalities created by the legislature. "The power is an attribute of sovereignty and is primarily vested in the legislature, which has the right to recall it at any time from the agency to which it has been delegated." (*City of Chicago* v. *O'Connell,* 278 Ill. 591.) This last case was again brought to this court on substantially the same record, where the former opinion was

held binding on this court. (*City of Chicago* v. *Dempcy,* 281 Ill. 257.) From this last judgment a writ of error was sued out of the United States Supreme Court. That court dismissed the cause for want of jurisdiction. (*Chicago* v. *Dempcy,* 40 Sup. Ct. Rep. 53.) The police power of the State has never been exactly defined or circumscribed by fixed limits. It is considered as being capable of development and modification within certain limits, so that the powers of governmental control may be adequate to meet changing social, economic and political conditions. In a general way it may be defined "as comprehending the making and enforcement of all such laws, ordinances and regulations as pertain to the comfort, safety, health, convenience, good order and welfare of the public." *Wice* v. *Chicago and Northwestern Railway Co.* 193 Ill. 351; 6 R. C. L. 189.

It is suggested that section 4 of article 11 of the constitution of 1870 in effect forbids the changing of rates provided for by legislative authority thereafter. That section of the constitution provides: "No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town or incorporated village, without requiring the consent of the local authorities having the control of the street or highway proposed to be occupied by such street railroad." In *Public Utilities Com.* v. *Chicago and West Towns Railway Co.* 275 Ill. 555, in considering this section of the constitution the court said (p. 570): "'That provision is simply a limitation of the general powers of the legislature, and in one particular, only. It provides, in substance, that the legislature may not grant the right to construct and operate a street railroad within a municipality without requiring the consent of the local authorities having control of the streets or highways proposed to be occupied. That section of the constitution does not, by implication or otherwise, attempt to divest the State of its paramount authority and control of streets and highways." That doctrine in that case was

fully approved by this court in *City of Chicago* v. *O'Connell, supra.* We have also said: "All contracts, whether made by the State itself, by municipal corporations or by individuals, are subject to be interfered with or otherwise affected by subsequent statutes enacted in the ·*bona fide* exercise of the police power, and do not, by reason of the contracts clause of the Federal constitution, enjoy any immunity from such legislation." (*Hite* v. *Cincinnati, Indianapolis and Western Railroad Co.* 284 Ill. 297.) The court in this last case quoted with approval from *Manigault* v. *Springs,* 199 U. S. 473, the rule as there stated by that court on page 480: "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal or are necessary· for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people and is paramount ·to any 'rights under contracts between individuals."

It has long been a principle of constitutional law that in matters relating to the police power each successive legislature is of equal authority, and that a legislative body can not part with its right to exercise such police power but has authority to use it again and again, as often as the public interests require. · "It has been said that the governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted nor the use of property be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury. These principles are embodied in the familiar rule that the State cannot barter away the right ·to use the police power, and cannot by any

contract divest itself of the power to provide for acknowledged objects of legislation falling within the domain of the police power. Accordingly the legislature cannot surrender or limit such powers, either by affirmative action or by inaction, or abridge them by any grant, contract or delegation whatsoever. The discretion of the legislature can not be parted with, any more than the power itself. These principles apply to the police power delegated to municipal corporations. Thus the general police power possessed by a city is a continuing power and is one of which a city can not divest itself, by contract or otherwise." (6 R. C. L. 190, 191.)

The municipal authorities in this State have never been clothed with power to fix, by binding contract, rates for any definite term of years. (*City of Danville* v. *Danville Water Co.* 178 Ill. 299, and 180 id. 235; *Danville Water Co.* v. *City of Danville,* 186 id. 326; *Freeport Water Co.* v. *City of Freeport,* 186 id. 179.) The doctrine in these last two cases was approved, on appeal, by the United States Supreme Court in 180 U. S. 619, and id. 587. As was said by this court in *Hite* v. *Cincinnati, Indianapolis and Western Railroad Co. supra:* "Appellant dealt with the railroad company knowing that it was a public utility and that any contract made with it relating to its service was subject to alteration or abrogation by the State in its exercise of that police power." The following, among other authorities, tend to support this same conclusion: 12 Corpus Juris, 991, 1011; *City of Woodburn* v. *Public Service Com.* 82 Ore. 114; *Salt Lake City* v. *Traction Co.* 173 Pac. Rep. 556; *City of St. Louis* v. *Public Service Com.* 207 S. W. Rep. 799; *Quinby* v. *Public Service Com.* 223 N. Y. 244; *People* v. *Public Service Com.* (N. Y.) 121 N. E. Rep. 777.

Counsel for the appellant cite and rely upon *People* v. *Suburban Railroad Co.* 178 Ill. 594, *Chicago General Railway Co.* v. *City of Chicago,* 176 id. 253, *Byrne* v. *Chicago General Railway Co.* 169 id. 75, and *City of East St. Louis*

v. *East St. Louis Gas Light Co.* 98 id. 415, as holding
that street railway companies, having accepted ordinances,
are estopped to question the city's power to enforce the pro-
visions of such ordinances. We do not think these cases
or the other authorities relied on by counsel for appellant
are directly in point. The Illinois cases cited in appellant's
brief are controversies directly between the railroad com-
panies and the municipal authorities, and the question of
the power of.the State, in the exercise of its police power,
to regulate rates was not involved in any of them. They
were decided years ago, before the passage of the Public
Utilities act, and at a time when a State rate-regulatory
body as an arm of the legislature had not been created.
In *Salt Lake City* v. *Traction Co. supra,* there is a full
discussion and review of the leading cases on the question
here involved, and cases similar to those cited by appellant
in its brief are there distinguished from cases in which the
legislature, through its lawful agencies, had abrogated rate
provisions. The court, in distinguishing between the cases
on this point, said (p. 561) : In many of those cases "it
is held that franchise ordinances like those in question in
the case at bar constitute contracts which are binding and
enforcible between the parties. The further question was,
however, not decided whether such contracts are also bind-
ing upon the State in its sovereign capacity. Indeed, in
many of the cases it is clearly enough intimated that if that
question had been presented for decision the results might
have been different."

There are certain other decisions which perhaps bear
more particularly on the point directly involved in this case
than those already referred to. The case nearest in point in
support of appellant's contention which has been called to
our attention is *Interurban Railroad and Terminal Co.* v.
*Public Utilities Com.* 120 N. E. Rep. 831,—a decision by
the Supreme Court of Ohio. While that case, in principle,
is somewhat similar to the one here under consideration, yet

there the constitutional, legislative and contract provisions concerning which the decision was rendered were different from those involved here and the cases can be fairly distinguished for that reason. The court there said (p. 834): "The legislature has not attempted to confer upon the Public Utilities Commission the authority to change rates fixed by contract between the company and local authorities." This court, in the decisions already cited, has frequently held that such authority has been conferred upon the Public Utilities Commission in this State. Among others, the recent case of *Public Utilities Com.* v. *Chicago and West Towns Railway Co. supra,* so held in effect. Another Ohio case is *Columbus Railway, Power and Light Co.* v. *City of Columbus,* 39 Sup. Ct. Rep. 349. In this last case the Federal Supreme Court specifically stated that there was no showing that the contract had become impossible of performance, nor were facts established in the record proving that, taking the whole term of the franchise together, the contract would necessarily be unprofitable or unremunerative to the public utility corporation, while in this case it is conceded the record shows that the railway company must charge and collect fares in excess of those prescribed in said ordinance in order to meet operating expenses.

It has been laid down in some of the United States Supreme Court decisions that the right of a State to regulate the rates and service of a public utility corporation may be abridged by a contract of the State, covering a reasonable period, as to compensation for the performance of public service, and that the State may so contract directly, or through a municipality as the State's agent, under delegated authority, but that in every instance the authority of the municipality to make such a contract must be expressly and unmistakably granted by the State and cannot arise by mere implication or inference. (*Home Telephone Co.* v. *Los Angeles,* 211 U. S. 265; see, also, to the same effect, *Milwaukee Electric Railway and Light Co.* v. *Wisconsin*

*Railroad Com.* 238 U. S. 174, and *Puget Sound Traction, Light and Power Co.* v. *Reynolds,* 244 id. 574.) This last case clearly distinguishes some Michigan cases, especially *Detroit United Railway Co.* v. *Michigan,* 242 U. S. 238, relied on by those who argue that the contract by a public utilities corporation is a binding agreement upon all parties, including the State. In jurisdictions where the doctrine of *Home Telephone Co.* v. *Los Angeles, supra,* controls, the first inquiry always is whether the State legislature, in express and unmistakable terms, has granted to the municipality power and authority to make a binding contract as to rates of fare. This question is a matter of consideration for the State authorities, as to which the decision of the highest court of the State is controlling. (*Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531; *Atlantic Coast Line Railroad Co.* v. *Goldsboro,* 232 id. 548; *Columbus Railway and Power Co.* v. *City of Columbus,* 249 id. 399.) The extent of the authority conferred upon the city by its charter; the construction of the various provisions of the charter; the validity, scope and effect, under the State law, of the ordinances adopted by the city; the scope and effect of the proceedings, and the rights of the parties thereto, under the State law, are State questions, as to which the decision of the State courts must control. *St. Louis Land Co.* v. *Kansas City,* 241 U. S. 419. See, also, *City of Pawhuska* v. *Pawhuska Oil and Gas Co.* 250 U. S. 394.

We think it has clearly been settled by the decisions of this court that the Public Utilities Commission of this State, under the Public Utilities act, has had conferred upon it the power of changing the rates to be charged by public utilities corporations. (See *City of Chicago* v. *Pennsylvania Co.* 252 Ill. 185; *Public Utilities Com.* v. *Chicago and West Towns Railway Co. supra; City of Chicago* v. *O'Connell, supra; Hite* v. *Cincinnati, Indianapolis and Western Railroad Co. supra.* See, also, *Ottumwa Railway and Light Co.* v. *City of Ottumwa,* 173 N. W. Rep. 270; *Kansas City*

290—24

v. *Public Service Com.* 210 S. W. Rep. 381.) A writ of error was sued out in this case to the United States Supreme Court and that court dismissed the cause for want of jurisdiction. (*Kansas City* v. *Public Service Com.* 40 Sup. Ct. Rep. 54.) Under these and other decisions of this court already cited there can be no escape from the conclusion: that the Public Utilities Commission has the right and authority, under the police power of the State, to make the change in these rates as provided in its order as found in this record. The great weight of authority in other jurisdictions is in accord with this conclusion.

The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*