## KAREL v. CITY OF ELDORADO.

District Court, E. D. Illinois. May 18, 1929.

No. 94–D.

Rearick & Meeks, of Danville, Ill., and Richmond, Jackman, Wilkie & Toebaas, of Madison, Wis., for plaintiff.

Gunn, Penwell & Lindley, of Danville, Ill., Arthur W. Summers, of Eldorado, Ill., and C. A. Whiteside, of Simpson, Ill., for defendant.

LINDLEY, District Judge. Plaintiff filed herein his bill for foreclosure of a mortgage upon the municipally owned water plant of Eldorado, Ill., securing certain water certificates issued in pursuance of the statute hereinafter mentioned. The court, upon application of the plaintiff, appointed a receiver, who has for more than a year past operated the property. In the original bill, plaintiff prayed that the court enjoin the city from receiving water service, unless the city should fix and establish adequate rates for both public and private consumption of water in not less than a minimum rate to be fixed by the court. This prayer for relief was based upon averments that the rates established by the city are not sufficient to pay the running expenses and the interest upon the certificates, and meet the sinking fund requirements. Some months later plaintiff filed its formal motion for a temporary injunction, basing same upon the averments of the bill and certain affidavits filed in connection therewith.

The city insists as a matter of law that the motion of the plaintiff should be denied, first, because the rates complained of are fixed by agreement of the parties, and hence cannot be disturbed by the court; and, second, because, if the court should find it has the power to examine the sufficiency of the rates, the plaintiff, being the representative of security holders, may not complain of alleged confiscation. Plaintiff denies the existence of any binding agreement between the parties fixing rates.

If the legislative authority to fix and enforce reasonable rates to be paid public utility corporations for the services performed by the latter be reserved, that power does not include the right to fix rates so low as to be confiscatory of the property of the utility companies. Southern Iowa Electric Co. v. Chariton, 255 U. S. 541, at page 542, 41 S. Ct. 400, 65 L. Ed. 764, and cases there cited. It is equally well settled, however, that if the public service corporations and the legislative agency dealing with them have power to contract as to rates, and carry that power into effect by agreeing upon the same, the enforcement thereof is controlled by the terms of the contract, and in such case the question as to whether such rates are confiscatory is immaterial and irrelevant. Southern Iowa Electric Co. v. Chariton, 255 U. S. 541, 41 S. Ct. 400, 65 L. Ed. 764.

As stated by Judge Wade in Muscatine Lighting Co. v. City of Muscatine (D. C.) 256 F. 929, at page 933: "It must be apparent that if the confiscatory rate is fixed, not by the municipality, but by the utility company, the state has done no act 'depriving' the company of its constitutional rights. It must likewise be apparent that, if the rate is the joint act of the utility company and the city, if the utility company has consented to the rate, it has waived the constitutional right which it might otherwise assert, and I am convinced that, if a rate is fixed by agreement of the utility company, which at the time is a reasonable rate, but which thereafter becomes confiscatory, without any act of the state, but simply as a result of industrial conditions, the prohibition of the Fourteenth Amendment upon the state is not violated by the state. This is serious business, restraining the sovereign act of a state. There is no constitutional guaranty of compensatory rates. So far as income and profits are concerned, the utility corporation stands exactly in the same position as the building corporation, or the street improvement company. It may make money; it may lose money; but only when the state has acted affirmatively, to the deprivation of reasonable income upon actual investment, can consitutional guaranty be invoked; and where the utility company consents to the act of the state, there is not that 'deprivation' or 'denial' which the Constitution forbids."

It becomes necessary, therefore, to determine whether the city of Eldorado had power to enter into a valid contract with security holders fixing rates, and whether it did enter into such an agreement. If there is a binding contract as to rates, the court has no jurisdiction to inquire into any alleged confiscatory character of the same.

Whether the city of Eldorado possessed the power to contract as to rates depends upon the Illinois statute approved April 22,

1899, and in force July 1, 1899 (Laws 1899, p. 104), authorizing municipalities to issue certificates of indebtedness for the purchase of water utility plants, payable only out of the water fund. Section 2 of that act provides that the city shall pass an ordinance, which shall become binding (unless objected to by the public by a provided statutory method), and that "said ordinance shall fix the rates at which water is to be supplied for all private purposes, and said rates so fixed shall not thereafter be reduced until the certificates * * * and the interest thereon are fully paid." The statute further provides that the funds collected from the operation of the plant shall be paid into the special water fund and gives to the city authority to execute a mortgage to secure the certificates. Section 5 provides for foreclosure of the mortgage, and contains a further provision that the rate for the private consumer for water shall after sale remain the same as fixed in the ordinance, but that the court may fix the rate, which the city shall be required to pay, for the public use of water.

By this act the Legislature conferred upon the city the right to buy a water plant, to issue certificates for the payment therefor, to execute a mortgage securing same, and to fix water rates to produce funds, by an ordinance to be agreed to by the persons receiving the certificates. The Legislature reserved no authority over rates, and included no direction to the city council as to the exercise of its discretion in fixing and agreeing upon rates for private use. The statute amounts to a grant of a legislative power to fix rates and contract therefor. It is quite well recognized that a city, acting under state authority, may, in matters involving ownership or proprietorship of utilities, make binding agreements with those with whom it deals. Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 27 S. Ct. 762, 51 L. Ed. 1155; Columbus Ry., Power & Light Co. v. Columbus, 249 U. S. 399, 39 S. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648.

The further question arises as to whether the city and the security holders, having power to fix rates by contract, did in fact do so. There is no question here as to a franchise, but merely a question as to whether or not the city and the security holders entered into a definite binding contract. The acts of the city began with the adoption of an ordinance which, in accordance with the provisions of the statute, authorizes the issuance of certificates aggregating $390,000 for the purchase of a water supply system.

It provides for the purchase of the plant for the consideration of said certificates, payable out of the water fund, and authorizes the issuance of a mortgage to secure the same. In the ordinance it is provided that all water supplied to consumers shall be supplied through meters only, and "that the rates to be charged therefor are hereby fixed on the following scale." After setting forth the schedule, the ordinance proceeds as follows: "It is agreed that the foregoing rates shall not be reduced until all of said special water fund certificates and interest thereon shall have been fully paid. Nothing contained in this ordinance shall be construed as limiting the right of the city, or any other agency recognized by law, to increase water rates or charges."

In pursuance of this ordinance, authoritatively adopted, the city issued its certificates and its mortgage or deed of trust to secure the same. The deed of trust recites the adoption of the ordinance, the fact that after due notice there had been no protest upon the part of the public, the authorization of the purchase of the plant, the conveyance of the same to the city, and all the provisions of said ordinance, and proceeds to convey all of the property included in the plant to the trustee therein named, as security for the certificates. Among the numerous covenants and agreements therein contained is one by the city, identical with that contained in the ordinance, to the effect that water supplied to consumers shall be supplied through meters only, and "that the rates to be charged therefor shall be as fixed in and by the ordinance aforesaid, and that said rates shall not be reduced until all of the said special water fund certificates of indebtedness and the interest thereon shall have been fully paid." This mortgage was executed by the city, and the trustee accepted the same and became bound thereby. These documents evidence the purchase of the water plant and the payment therefor. The plaintiff is the representative of the persons to whom said certificates were issued for the plant.

These facts cogently establish that the parties entered into a binding contract as to rates to be charged private consumers. The city created a debt, which it agreed to pay out of a certain fund, to be collected at certain fixed rates, which should not be reduced. To secure such payment it authorized and executed a mortgage upon property which it owned, and agreed that, if it should fail to pay its debt by the rates prescribed and out of the fund thereby created, the holders of the securities might foreclose and exercise

their rights under the statute of the state of Illinois. Authority to execute the contract having been granted by the Legislature, and the city having exercised that authority by its ordinance fixing rates, to which the security holders, by their representative, assented, no reason appears why each of the respective parties should not be bound by the formal agreement.

In Paducah v. Paducah R. Co., 261 U. S. 267, 273, 43 S. Ct. 335, 67 L. Ed. 647, the doctrine enunciated in Southern Iowa Electric Co. v. Chariton, 255 U. S. 539, 41 S. Ct. 400, 65 L. Ed. 764, is reiterated, the court saying that, where the rate is fixed by a binding contract, the public utility cannot complain, and the question of whether the rate is too low to give a reasonable return is immaterial. In Columbus Ry., Power & Light Co. v. Columbus, 249 U. S. 399, 39 S. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648, a rate case, the court say: "It certainly was not intended to question the principle, frequently declared in decisions of this court, that, if a party charge himself with an obligation possible to be performed, he must abide by it, unless performance is rendered impossible by the act of God, the law, or the party. Unforeseen difficulties will not excuse performance, * * * It may be, and, taking the allegations of the bill to be true, it undoubtedly is, a case of a hard bargain. But equity does not relieve from hard bargains simply because they are such."

It is probable that the construction which the court has adopted imposes a hardship upon the security holders. Doubtless it is inequitable to expect them to allow service to be furnished out of property upon which they hold liens at rates which will not pay an income upon their security. But these considerations do not present any ground upon which this court can grant relief. Its only power is to declare the law and apply it. "A sound public policy forbids usurpation by the courts of governmental power lodged in other departments of the government. No power inheres in a court, either to make contracts for parties, or to absolve them from the effect of their contracts, provided the parties are competent in law to contract, and no fraud intervenes in the making thereof." Columbus Ry., Power & Light Co. v. City of Columbus (D. C.) 253 F. 499. There is no judicial method by which relief can be created or granted as to the rates charged private consumers, so long as they are not reduced below those fixed by the parties by their voluntary contractual acts.

Plaintiff cites many cases in which rates for public service fixed by franchise ordinances have been set aside by act of the municipality, or by act of the state itself. An examination of each of the citations discloses that they fall within the category of cases where there has been a reservation to the state Legislature of the right to exercise its police power in the fixing of rates for public utilities, or such a similar reservation in some agency of the state. There can be no question that the state, unless it has made no reservation of power of control, may through its Public Utilities Commission interfere with what are apparently contract rates. Such contracts, where there is reservation of power in the Legislature or its delegated agencies, are made subject to the dominant police power of the state.

The Supreme Court of Illinois, in the case of Public Utilities Commission v. Quincy, 290 Ill. 360, 125 N. E. 374, held that the commission has authority to make changes in the rates fixed in a franchise ordinance for a number of years. The theory of all such cases is that "the surrender by contract of a power of the government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized; no other body than the supreme Legislature has the authority to make such a surrender, unless the authority is clearly delegated to it by the supreme Legislature," and that the power to control is reserved in the state, unless there is a clear and distinct delegation of authority. However, as the Supreme Court said in the case of Home Telephone & Telegraph Co. v. Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 53 L. Ed. 176: "It has been settled by this court that the state may authorize one of its municipal corporations to establish by an inviolable contract the rates to be charged by a public service corporation * * * for a definite term, * * * and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates."

The court there proceeded to say that no case can serve as a controlling precedent for another, but that the outstanding questions in each case are, first, as to whether or not there is a complete authority to fix rates delegated by the state to the municipality; and, second, whether that power has been exercised in the form of a definite and fixed contract. In view of the legislative grant now before the court, and the plain provision of the ordinance duly accepted by the security holders, it is apparent that the cases suggest-

ed in this connection by the plaintiff have no analogy.

It is insisted by the plaintiff that the fact that the contract embraced in the ordinance provides that the rates thereby fixed shall not be lowered impliedly grants to the city the right to increase the rates at any time, and that the relationship between the security holders and the city is one lacking in mutuality, so that there is no valid contract. The court is unable to appreciate the force of this contention. If the city has impliedly reserved the right to raise the rates, such reservation amounts merely to an option upon its part. This option to do something which could not injure the plaintiff is amply supported, so far as consideration is concerned, by the covenants and agreements of the contract. The mere fact that one of the contracting parties, for a valuable consideration, reserves or is granted an option to do something in the future, which cannot injure the other party, has never to the court's knowledge been successfully urged as proof of lack of mutuality.

In this respect the instant situation is not unlike those of the case of City of Cleveland v. Cleveland City R. Co., 194 U. S. 517, 24 S. Ct. 756, 48 L. Ed. 1102, where under accepted ordinances a utility commission agreed never to charge more than a 5-cent fare, although there was nothing in the ordinances to prevent the city from thereafter increasing the rates, and the court held that the ordinances were intended to be agreements binding upon both parties, definitely fixing the rates which might be charged, the utility company having reserved no right to increase its fare; the case of Georgia R. & Power Co. v. Decatur, 262 U. S. 432, 43 S. Ct. 613, 67 L. Ed. 1065, where the city of Decatur brought a suit for injunction against the railway company to restrain it from increasing its fare from 5 cents to 7 cents, the ordinance providing that no more than 5 cents for one fare should be charged, the court holding that the utility company was bound by the contract rate, though it was apparent that there was nothing in the contractual relationship to prevent the city from raising fares voluntarily; and the case of Southern Utilities Co. v. Palatka, 268 U. S. 232, 45 S. Ct. 488, 69 L. Ed. 930, where the city brought a suit to restrain the utility company from charging more than 10 cents per kilowatt hour for electricity, the maximum rate fixed by the ordinance, the court holding that the injunction should be granted, though as it said, "Without considering whether an agreement by the company, in consideration of the grant of the franchise, might not bind the company in some cases, even if it left the city free," for the reason, as the court stated, that this situation did not destroy the binding effect of the contract between the parties.

In the instant case the security holders received the securities, which the city contracted should be paid out of a special fund produced by certain schedules, which should not be reduced. Plaintiff now says that, because its interest is not being paid, the rates so fixed in its contract are confiscatory, and that the fact that the city may possibly raise the rates nullifies any binding effect of contractual relationship. This court is unable to conceive of any reason why, even though there is an option reserved to the city to do something that might benefit the security holders—that is, to raise the rates—it follows that there is lack of mutuality or that there is no binding contract. The security holders agreed to accept certain fixed rates; the city agreed to see that they were assessed and paid. Both parties are bound.

It is insisted that there is an implied obligation upon the part of the city of Eldorado to charge such water rates as may be necessary to pay the certificates, on the theory that the promise upon the part of the city to pay the certificates carries with it such an implication. In support of this contention various cases are cited, including: Warner v. New Orleans, 167 U. S. 467, 17 S. Ct. 892, 42 L. Ed. 239; Mather v. City and County of San Francisco (C. C. A.) 115 F. 37; Cushman v. Warren-Scharf Asphalt Paving Co., 220 F. 857 (C. C. A. 7); Vickrey v. City of Sioux City (C. C.) 104 F. 164; Farson v. City of Sioux City (C. C.) 106 F. 278; Burlington Savings Bank v. City of Clinton (C. C.) 106 F. 269; and some other decisions from state courts.

Without exception, these cases have to do with situations where municipalities have authorized the construction of local improvements, such as pavements, sewers, and similar improvements, and issued warrants for the payment thereof, drawn against special assessments upon property owners. In each of the cases the courts held that, inasmuch as the municipality had created an obligation payable out of a certain fund, it is under an implied obligation to do whatever is reasonable, fair, and necessary to make, create, and maintain that fund. In each instance the suit was brought for the purpose of compelling the defendant to do that which it ought to do to carry out the scheme of improvement, including levying special assessments, collecting the same, and making proper payment

thereof to the bondholders. There can be no question as to the duty of the municipality in such a situation, but it has no analogy to the instant case.

The city of Eldorado is under obligation to enforce its ordinance with regard to the assessment of water rates, the collection thereof, and the payment of the same to the certificate holders. The cases cited by plaintiff establish clearly such a duty, but there is nothing in the record to indicate any further duty upon the part of the city, other than to perform its statutory and contractual duties, as provided in the ordinance.

It is insisted that the court may, pending the litigation, direct the receiver to collect water rates in excess of that fixed by any contract. Undoubtedly the court may protect its maintenance and operation of the property to the extent of collecting such rates as are necessary to pay for the same, but the court has never understood that it has power to interfere with contracts to the extent of directing the receiver to violate the same by collecting rates in excess thereof for the purpose, not of paying the expenses of administration, but of producing revenue for one of the interested parties in litigation. This court will not hesitate to direct the receiver so to operate and manage the property as to produce sufficient revenue to pay the expenses of administration, but it has no jurisdiction to direct a receiver, merely because he is a receiver of this court, and for no other reason, to collect funds sufficient to pay interest upon the securities, payable according to the terms of a binding contract. If the plaintiff is entitled to such relief, it must be upon grounds other than that a receivership is pending which is operating the property for the court, upon ground of its own making, and not because of the court's action in taking over the property and preserving it for the benefit of all parties.

As it appears that the earnings of the defendant are more than sufficient to pay the costs of administration as they accrue, including the operation of the plant, there is no basis for the relief prayed so far as the rates charged private consumers is concerned. The plaintiff's motion as to relief concerning the same is denied. As to the rates to be paid by the city for the public use of water, the statute apparently gives the court full power to examine the same and to determine their sufficiency. The plaintiff has offered some evidence in support of its contentions as to these rates, and the defendant may within the next 30 days offer such evidence as it may desire in defense.