WILDER et al. v. CITY OF NEW ORLEANS.

(Circuit Court of Appeals, Fifth Circuit. April 12, 1898.)

No. 409.

1. DRAINAGE WARRANTS—APPOINTMENT OF RECEIVER—LIABILITY OF CITY.

By Act La. No. 30, 1871, the board of administrators of the city of New Orleans was authorized to make and collect drainage assessments, and hold the amount collected in trust for the payment of warrants issued for drainage work done by parties to whom the whole drainage work was by said act intrusted. June 7, 1876, by authority of Act No. 16, 1876, the city purchased the drainage franchise and property for $300,000, and issued drainage warrants therefor. In 1891 a receiver was appointed by the circuit court, to whom the city transferred the assets and property of the drainage fund. *Held*, that holders of warrants issued for such purchase are not restricted for their payment to funds in the hands of the receiver, but are entitled to a judgment against the city, to be paid out of the drainage taxes collected by it.

**2. APPOINTMENT OF RECEIVER—ABATEMENT OF PENDING ACTIONS.**
     The appointment of a receiver of the property of a debtor does not abate
personal actions pending against the debtor, and, as to such an action, the
receiver has no status in court until made a party thereto on his own ap-
plication; the plaintiff having a right to proceed to final judgment without
him.

In Error to the Circuit Court of the United States for the Eastern
District of Louisiana.

On June 5, 1886, plaintiffs brought an action at law for the recovery of
$7,000, with interest, the amount of two drainage warrants, one for $2,000
and one for $5,000, both dated June 6, 1876, executed by the administrators of
public accounts and finances of the city of New Orleans. The petition
alleged that the city of New Orleans was bound for the payment of these
two obligations under the laws and ordinances under which they were issued,
and the benefits derived by the city from the drainage work done under Act No.
30 of 1871. By Act No. 30 of 1871, the whole work of drainage was confided to
the Mississippi & Mexican Gulf Ship-Canal Company, and all the moneys
and assessments, real estate, books, plans, tableau, and judgments of the
drainage commissioners were transferred to the board of administrators of
the city of New Orleans, which was subrogated to all the rights and powers
theretofore possessed by the said commissioners. By the same act the as-
sessments made by the commissioners were expressly confirmed and made
exigible; and the board of administrators were also authorized to make fur-
ther assessment, and to collect all of such assessments, and hold the amount
collected in trust for the payment of warrants issued as provided in the act
for drainage work. The work was carried on by the canal company until
1872, after which, and until June 6, 1876, the work was prosecuted by
Warner Van Norden, who had become the transferee of the franchise and proper-
ty of the canal company. In 1876 the legislature passed Act No. 16, author-
izing the city of New Orleans to purchase the franchise, dredge boats, etc.,
from Van Norden, transferee of the canal company, upon a valuation to be
fixed by the appraisers appointed by it, and to issue drainage warrants in
discharge of the price, payable out of the drainage taxes. Pursuant to this
authority, the city, by notarial act dated June 7, 1876, made the purchase
upon a valuation of $300,000, and issued drainage warrants for that amount
to Van Norden. Among those thus issued were the two sued on in this case.
The city filed an exception and answer to the plaintiffs' second amended
petition—First, "setting up as an exception that all powers and liabilities
of the city appertaining to the drainage fund or tax had been withdrawn,
and vested in a receiver appointed by decree in the suit of Peake against
the city, No. 12,008 on the docket of the circuit court, and that since said
decree it is without authority to stand in judgment, and that the suit should
be prosecuted against the receiver"; second, "that, in case the exception
should be overruled, then the city, answering, said that all drainage warrants
that may have been issued by the city were issued, not as a municipal cor-
poration, but as a statutory trustee of the drainage fund, which trust
terminated when the assets and property of the drainage fund were turned
over to the receiver, and the city was without authority and liability to stand
in judgment. The prayer is that the plaintiffs' demand be rejected, and
that, should there be judgment, it should be restricted to payment to the
funds in the hands of the receiver." The defendant's exceptions were first
heard by the court, and overruled upon an agreed statement of facts, admit-
ting that a receiver was appointed June 13, 1891, by order of the circuit
court in Peake against the city of New Orleans, with the powers conferred
by the order, and that the city had made the transfer of the assets set out
in the deed. The case was then tried before a jury practically upon the
same issue set up in the exception, which had been overruled; plaintiffs
offering in evidence the act of sale from Van Norden to the city of the
drainage plant and franchises, and the warrants sued on which were issued
in part payment of the price, and the defendant offering the bill of complaint
in the case of Peake against the city, and the order appointing a receiver,

and the various acts of the legislature, and the decision of the supreme court in the case of Peake v. U. S., 139 U. S. 349, 11 Sup. Ct. 541, also the agreed statement of facts on the trial of the exceptions. It was also mutually conceded that the city submitted to the appointment of a receiver, without opposition or argument; that no proof was introduced showing or tending to show that she had accounted to the receiver other than as shown by her deed of transfer to him, or that he had sued the city touching its trust under the drainage laws. This being the entire evidence adduced in the case, as shown by the bill of exceptions, the plaintiffs asked the court to instruct the jury to find a verdict in their favor. This the court refused to give, but, instead, directed a verdict for the defendant, for the reasons given in his written opinion on file, to which exception was duly taken.

The case comes to this court upon the following assignments of error: (1) "The judge of the said circuit court erred in not directing the jury to find a verdict in favor of the plaintiffs upon the undisputed facts set forth in the bill of exceptions filed in the record, and in directing a verdict for the defendant upon the same facts." (2) "The said judge erred in ruling that plaintiffs were not entitled to a verdict and judgment against the defendant, payable out of the drainage tax fund created by the various acts of the legislature of the state of Louisiana, as prayed in their petition." (3) "That the said judge erred in ruling that the appointment of a receiver in the case of James W. Peake against the city of New Orleans, No. 12,008 of the docket of the circuit court of the United States, operated as a bar in this suit, and directing, in consequence thereof, a verdict for defendant, and entering an absolute judgment against the plaintiffs on their demand." (4) "The warrants sued on in this case having been given by the defendant in payment of the price of property purchased by her from W. Van Norden in the act of sale of June 7, 1876, as a voluntary trustee, and not for work, while the city of New Orleans was an involuntary and noncontractual trustee, the said judge erred in not distinguishing this from the Peake Case, reported in 139 U. S. 349 [11 Sup. Ct. 541]."

Chas. F. Rice, Richard De Gray, John D. Rouse, and Wm. Grant, for plaintiff in error.

S. L. Gilmore and Branch K. Miller, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

SWAYNE, District Judge (after stating the facts). The ruling and decision of the circuit court upon which the jury was directed to find a verdict for the defendant, as appears from the opinion of the learned judge who presided at the trial, were based upon two propositions of law: First, that the city was a naked statutory trustee of the drainage fund, without any direct personal liability to the holders of warrants drawn against that fund; and, secondly, that the appointment of a receiver of that fund in the Peake Case, in 1891, operated as an abatement of this suit, which was filed in 1886, or five years before said receiver was appointed. These are the only issues before the court, and we propose to discuss them in the order stated.

The first relates to the second and third assignments of error, and involves the question whether the plaintiffs are not, as holders of warrants issued by the city in payment of the price of the dredge boats, machinery, and franchises purchased from Van Norden, entitled to a qualified judgment at law against the city, payable out of the drainage assessments and taxes. In construing the Peake Case, the presiding judge below seemed to assume that, be-

cause the supreme court in that case treated the city as a mere statutory, compulsory, and noncontractual trustee of the drainage taxes, it necessarily follows that she rests under no legal obligation to pay any warrants out of those taxes, even if she had collected them. We do not think the case referred to, upon careful study, can support any such construction. It indicates the right of all warrant holders to recover a judgment at law, payable out of the drainage taxes. Speaking of the judgment at law in the Peake Case, the court, on page 349, 139 U. S., and page 544, 11 Sup. Ct., by Justice Brewer, announces the following:

"That judgment determined the direct liabilities between the parties. It absolved the defendant from any primary obligation of debtor to creditor. It left it chargeable only as a trustee of a fund out of which plaintiff's claim was to be paid. It was like a judgment which in fact, against an estate, is nominally entered against the administrator thereof, to be satisfied out of the property of the estate, and not out of the individual property of the administrator. The propriety of this judgment has not been questioned. * * * It has been accepted by the complainant as a correct adjudication of the rights between the parties; and, in passing, it might be observed that its adjudication of rights was unquestionably correct."

While the supreme court thus approved the qualified judgment at law, it found, upon an accounting of the fund called for in the supplemental proceedings filed to aid its execution, that the city had discharged her liability to contribute to that fund for the purpose of paying the warrants involved in that suit, which were warrants given for drainage work done while the city was an involuntary trustee. The decision puts an end to all possible claims of holders of that class of warrants by denying their validity against the fund, for reasons stated by the court. But the plaintiffs in this case are not holders of warrants given by the city in such capacity mentioned above, but the warrants here sued on were issued by the city as a voluntary contractual trustee, for the price of the dredge boats, etc., purchased of Van Norden after her compulsory trusteeship had terminated. There would seem to be a wide distinction between the two classes of warrants, which we think is fully recognized by the supreme court in Warner v. New Orleans, 167 U. S. 467, 17 Sup. Ct. 892. In that case the issue was directly presented to this court whether the purchase warrants were governed by the decision in the Peake Case, and the court certified the following question, upon which the advice of the supreme court was requested:

(1) "Is the city of New Orleans under the warranties, express and implied, contained in the contract of the sale of June 7, 1876, by which she acquired the property and franchise from Warner Van Norden, under the averments of the bill, estopped from pleading against the complainant the issuance of the bonds to retire $1,672,105.21 of the drainage warrants, issued prior to said sale, as a discharge of her obligation to account for drainage funds collected on private property, and as a discharge from her own liability to that fund as assessee of the streets and squares?" (2) "Should the decision in the case of Peake v. New Orleans, 139 U. S. 342, 11 Sup. Ct. 541, be held to apply to the facts of this case, and operate to defeat the complainant's action?"

After reciting the history of the drainage work, and the condition of the drainage fund, Mr. Justice Brewer, speaking for the court, in answer to the first question, said:

"Now, the question is whether the city is not estopped to plead in defense of liability on these drainage warrants the fact of the prior issue of the bonds to a larger amount than that assessed against the areas of its streets and squares, and collected from private property. We think this question must be answered in the affirmative. The city, in respect to the purchase of this property from the canal company and its transferee, and in the obligation assumed by the warrants issued, acted voluntarily. It was not, in reference to these matters, as it was to those considered in Peake v. New Orleans, 139 U. S. 342, 11 Sup. Ct. 541, a compulsory trustee, but a voluntary contractor; and the proposition which we affirm is that one who purchases property, con- tracting to pay for it out of a particular fund, and issues warrants therefor payable out of the fund,—a fund yet partially to be created, and created by the performance by him of a statutory duty,—cannot deliberately abandon that duty, take active steps to prevent the further creation of the fund, and then, there being nothing in the fund, plead defense to a liability on the warrants drawn on that fund, that it had prior to the purchase paid off obligations there- tofore created against the fund. Whatever equity may do in setting off against all warrants drawn before this purchase from the canal company and its transferee the bonds issued by the city, * * * it by no means follows that the city can draw new warrants on the fund in payment for property which it voluntarily purchases, and then abandon the work by which alone the fund could be made good, resort to means within its power to prevent any pay- ment of assessments into that fund, and thus, after violating its contract promise not to obstruct or impede, but, on the contrary, facilitate by all law- ful means, the collection of the assessments, plead its prior issue of bonds as a reason for evading any liability upon the warrants. One who purchases property, and pays for it in warrants drawn upon a particular fund, the creation of which depends largely upon its own action, is under an implied obligation to do whatever is reasonable and fair to make that fund good. He cannot certainly so act as to prevent the fund being made good, and then say to his vendor, 'You must look to the fund, and not to me.' "

This court, on return of the opinion from which the above is a selection, announced the following decision (26 C. C. A. 513, 81 Fed. 650):

"Per Curiam. The city of New Orleans, under warranties, express and im- plied, contained in the contract of sale of June 7, 1876, by which she acquired the property and franchise from Warner Van Norden, and under the aver- ments of the bill, is estopped from pleading, against the complainant below and appellant here, the issuance of the bonds to retire $1,672,105.21 of drainage warrants issued prior to said sale, as a discharge of her obligation to account for drainage funds collected on private property, and as a discharge from her own liability to that fund as assessee of the streets and squares. Warner v. City of New Orleans, 167 U. S. 467, 17 Sup. Ct. 892. On the case made by the bill of complaint, the decision of the supreme court in the case of Peake v. City of New Orleans, 139 U. S. 342, 11 Sup. Ct. 541, does not necessarily apply to the facts in this case, nor operate to defeat the complainant's action. It follows that the circuit court erred in sustaining the demurrer to the com- plainant's bill. The decree of the circuit court is reversed, and the cause is remanded, with instructions to overrule the demurrer to the complainant's bill, and thereafter proceed as equity and good conscience may require."

Another ground on which the circuit court directed a verdict for the defendant was that a receiver had been appointed in the case of J. W. Peake against the city of New Orleans, and that he alone could sue the city for an accounting of the drainage fund. An exception had previously been filed setting up this fact in abatement of the suit, and had been overruled; but, without reinstating it, the court ordered a verdict for the defendant for the same cause, and en- tered an absolute judgment thereon against the plaintiffs, upon the

merits, instead of ordering the suit dismissed as in the case of abatement.

The circuit court below seems to have been of opinion that, wherever a receiver is appointed over the property of a debtor, the appointment instantly abates all personal actions pending against him, and vests all the rights of all his creditors in the receiver, who thereafter alone has authority to bring suits to enforce them, without regard to the character of those rights. A receiver is merely an officer of the court appointing him, to hold possession of property until the rights of the parties to the suit in which he is appointed can be determined. He represents neither of the parties to the suit, nor any one else, and has only such powers as the court may confer upon him. And in reference to the actions already begun, as in this case, the receiver has no status in court until he has made himself a party upon an application made by him.

In the case of Mercantile Trust Co. v. Pittsburg & W. R. Co., 29 Fed. 732, the court says:

"The appointment by this court of the receivers did not oust the jurisdiction which the court of common pleas had previously acquired of the proceedings against the railroad company, instituted by the petitioner for the ascertainment of his damages; nor did it operate as a stay thereof. Neither was the petitioner bound to bring in the receivers, as defendants, as he was seeking no relief against them. It was their business to intervene, and take defense, if they wished to do so. High, Rec. §§ 258–260; Tracy v. Bank, 37 N. Y. 523. The master was therefore correct in his determination that the petitioner's rights as a judgment creditor are not to be denied recognition, simply because he proceeded in the prosecution of this suit without making the receivers parties, or notice to them, and without leave of court."

And it is here to be observed that there was no proof in that case that the city had ever accounted for the drainage fund, or had been discharged as a trustee of that fund, or had even been asked by the receiver for an account and settlement of said fund. In fact, her relation to that fund had not terminated, and could not terminate, until she had so accounted and been discharged.

The court appointing a receiver, apparently acting upon consent, appointed J. W. Gurley receiver "of all property, interests, things in action, and effect of the drainage fund held by the defendant in trust," and vested him with all the rights and powers of a receiver in chancery, but did not vest him with authority to sue for and collect the drainage taxes,—a power which the supreme court had decided did not exist in a court of chancery.

In the case of Heine v. Commissioners, 19 Wall. 655, an effort was made to have the court assess and collect a tax to pay certain bonds, of which the court, at page 660, said:

"The power we are here asked to exercise is the very delicate one of taxation. This power belongs in this country to the legislative sovereignty,— state or national. In the case before us the national sovereignty has nothing to do with it. The power must be derived from the legislature of the state. So far as the present case is concerned, the state has delegated the power to the levee commissioners. If that body has ceased to exist, the remedy is in the legislature, either to assess the tax by special statute or vest the power in some other tribunal. It certainly is not vested, as in the exercise of an original jurisdiction, in any federal court. It is unreasonable to suppose that

the legislature would ever select a federal court for that purpose. It is not only not one of the inherent powers of the court to levy and collect taxes, but it is an invasion by the judiciary of the federal government of the legis-lative functions of the state government. It is a most extraordinary request, and a compliance with it would involve consequences no less out of the way of judicial procedure, the end of which no wisdom can foresee. See, also, Thompson v. Allen Co., 115 U. S. 550, 6 Sup. Ct. 140, and Meriweather v. Garrett, 102 U. S. 472."

It may happen that the plaintiffs cannot levy an execution on the property of their debtor, and take it out of the hands of the receiver, and that they will be forced to file a bill to reach property so situ-ated; but the supposed difficulties of obtaining satisfaction are mat-ters that in no way concern the defendant in error, and afford no legal reason why plaintiffs should not recover a judgment for their debt.

We think it therefore clear that the collection of the drainage tax after as well as before the appointment of a receiver remained solely in the city of New Orleans, notwithstanding the appointment of said receiver, and that a judgment against the city, to be paid out of the fund,—a fund which the city alone can collect,—is proper to be rendered in this suit. The judgment of the court below is therefore reversed, and the cause remanded, with instructions to award a new trial.