## ADLER v. SEAMAN et al.

(Circuit Court of Appeals, Eighth Circuit. May 11, 1920. Rehearing Denied September 18, 1920.)

No. 5449.

1. **Action ⚮57(1)—Consolidation of causes limited by statute.**

Under Rev. St. § 921 (Comp. St. § 1547), authorizing consolidation of causes "of a like nature or relative to the same question, * * * for avoiding unnecessary costs or delay, * * * when it appears reasonable to do so," the consolidation of causes is a matter of judicial discretion, but within the limits imposed by the statute, and litigants are deprived of legal rights if their causes are consolidated, outside of the terms of the statute, to their injury.

2. **Action ⚮57(2)—Consolidation of essentially different suits by different parties against same defendant not warranted.**

Where two suits against a street railroad company were pending at the same time, the first by a stockholder against the corporation and others to recover, in right of the corporation, assets wrongfully wasted by officers and directors, to secure removal of such officers and directors, and avoidance of alleged fraudulent contracts, and incidentally, if necessary, appointment of a receiver, and the second by a mortgage creditor for foreclosure and appointment of a receiver for alleged insolvency, the only question in common in the two suits being the receivership, and a receiver was appointed in the second suit, who took possession of the property, an order, made thereafter and before any action had been taken in the first suit, consolidating the two suits and treating the second as an intervention in the first, over objection of the complainant therein, *held* erroneous.

3. **Action ⚮57(1)—Consolidation dependent on status of cases.**

The propriety of any consolidation order must be determined by the situation of the two cases at the time the order is made.

4. **Action ⚮57(1)—Court without power to force intervention.**

Interventions are in their nature voluntary, and a court is without power to consolidate two suits and force the complainant in one into the position of an intervener in the other over his objection.

5. **Corporations ⚮320(4, 13)—Receivers ⚮52—Receiver for corporation necessary party to stockholder's suit, and appointment of receiver or extension of receivership unnecessary.**

Where a general receiver for a corporation was appointed in a suit by a creditor, and took possession and control of its property, the extension of his receivership to suit by stockholder to recover in right of the corporation assets alleged to have been wrongfully wasted by its directors *held* not only unnecessary, but improper, since the receiver, as representing the corporation, is a necessary party to such suit, and should be brought in that he may, if deemed advisable by the court, prosecute the same, or may as a defendant be bound by the adjudication.

6. **Appeal and error ⚮71(4), 78(1)—Order of consolidation and extending receivership appealable.**

An order consolidating two suits and making one subordinate to the other as an intervention, over the objection of complainant in the subordinated suit, and also extending the receivership in his suit to the other, *held* final and appealable.

7. **Abatement and revival ⚮8(5)—Stockholder's suit cannot exclude suits by creditors.**

A stockholder, by commencing a suit against the corporation and others to enforce rights inhering in the corporation, and incidentally praying for a receiver, if it should become necessary to protect the property from creditors, cannot confer on the court jurisdiction of the res, which will

⚮For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

exclude creditors from enforcing their rights, including the right to a receiver, if entitled to one, except by intervening in such suit. which, under equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii), would subordinate them to complainant's litigation.

**8. Equity ☞114—Order allowing invention cannot be made to relate back to operate as abatement.**

An order in a suit against a street railroad company, permitting the filing of petitions of intervention challenging the jurisdiction of the court, made after appointment of a receiver in the suit, who was then in possession of and operating a large property, cannot be made to relate back, so as to abate all prior proceedings, including appointment of the receiver, pending determination of the question of jurisdiction.

**9. Receivers ☞96—Appointment of counsel for receiver within discretion of court.**

Appointment as counsel for a receiver of one who had acted as one of the counsel for a complainant in bringing another suit *held* within the discretion of the court.

**10. Parties ☞38—Nature of "intervention."**

"Intervention" is a method of practice by which one having an interest or right which will be affected by existing litigation, to which he has not been made a party, may by leave of court, come into the litigation to protect such interest or right, and is not an independent action, but is ancillary and supplemental to the existing litigation.

[Ed. Note.—For other definitions, see Words and Phrases, Intervention.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer and John C. Pollock, Judges.

Suits by John W. Seaman against Richard McCulloch and others and by Samuel W. Adler against United Railways Company of St. Louis and others. From an order consolidating the two causes and extending the receivership in the Adler suit to the consolidated cause, Adler appeals. Reversed.

Edward W. Foristel, of St. Louis, Mo., for appellant.

Ephrim Caplan, of St. Louis, Mo., for appellee Seaman.

Irvin V. Barth, of St. Louis, Mo. (George H. Williams, William R. Gentry, M. F. Watts, and Edwin W. Lee, all of St. Louis, Mo., on the brief), for appellee Leed Mining Co.

Randolph Laughlin, of St. Louis, Mo. (Ephrim Caplan, of St. Louis, Mo., on the brief), for appellees Laughlin.

Before HOOK and STONE, Circuit Judges, and LEWIS, District Judge.

STONE, Circuit Judge. January 7, 1918, John W. Seaman, a preferred stockholder of the United Railways Company of St. Louis, filed his bill, charging waste and maladministration by certain present and past directors of that company, wherein he sought the recovery of the sums so wasted and the removal of the directors. An amended bill and a supplemental bill were later filed, and the cause brought to issue thereon by answer filed February 7, 1919. February 15, 1919, complainant filed his motion for the appointment of a receiver, which resulted in an order, February 17, 1919, appointing a master to take testimony and report upon the advisability of such receivership.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

March 27, 1919, the Leed Mining Company, a bondholder of the United Railways, sought and was permitted to intervene. April 1, 1919, E. A. Laughlin and Robert T. Laughlin, who were similar bondholders, intervened. Both intervening petitions prayed receivership, though with some differences.

April 11, 1919, Samuel W. Adler, a bondholder under a mortgage junior to that of the above interveners, filed his bill in equity against the United Railways, and its predecessor, St. Louis Transit Company, wherein he sought a receivership. Upon the same day the defendants filed separate answers in the Adler suit, admitting all of the allegations of that bill, and the United Railways joining in the prayer of the petition for a receiver. The following day, April 12th, Rolla Wells was appointed receiver in the Adler suit, and took immediate possession. April 22, 1919, Seaman and the two interveners filed separate motions in both the Seaman and Adler cases, praying that the two causes be consolidated, and that the Adler suit be treated as an intervention in the Seaman case. The above pleadings will be developed, and other pleadings which were filed will be noticed, further in this opinion. April 24, 1919, the court heard such motions, and ordered that—

"Cause No. 5608 [Adler suit] is considered an intervention in cause No. 4820 [Seaman suit], and is consolidated with the latter, and said causes shall hereafter proceed under the title 'John W. Seaman, Complainant, v. Richard McCulloch et al., Defendants, Consolidated Cause No. 4820, in Equity.'"

As a further part of said order Rolla Wells was appointed as receiver in the consolidated cause. The same day two other orders were made, by one of which the special master theretofore appointed in the Seaman case was appointed in the consolidated case under the receivership, and by the other Charles W. Bates was appointed general counsel for the receiver in the consolidated cause.

May 6, 1919, two interventions were permitted in the Adler suit; one by the above Laughlins, and the other by Henry F. Mueller et al., who were preferred stockholders in the United Railways and holders of bonds issued by that company, or by one of the companies making up the consolidation of the United Railways. May 22, 1919, Charles B. Cole and William B. Thompson, preferred stockholders of the United Railways, applied for leave to intervene in the consolidated cause. This application was reported adversely by the master November 26, 1919, and upon December 4, 1919, the court denied such application.

From various of the above proceedings three appeals have been taken. The present one, by Adler; another, by Henry S. Priest, a defendant in the Seaman Case, 266 Fed. 844, decided at this time; and the third, by Charles B. Cole and Thompson, 266 Fed. 846, also decided at this time. This appeal by Adler is from the above order of April 24, 1919, to the effect that "cause No. 5068 is considered an intervention in cause No. 4820 and is consolidated with the latter," and from the appointment of a receiver in that order.

The motions to which this order responded were expressly based upon equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii, 33 Sup. Ct. xxviii). The words of each motion are, in this respect, identical and

are "to treat said cause No. 5068 [Adler suit] as an intervention in said cause No. 4820 [Seaman suit], and to consolidate the same under equity rule 37 with said cause No. 4820 and to appoint Rolla Wells, receiver in said consolidated cause." Rule 37 has nothing to do with consolidation of causes, which is governed by section 921 of the Revised Statutes (Comp. St. § 1547). The rule controls interventions in equity suits. The purpose of the motions was therefore to secure intervention. No desire was evidenced for the mere trial of two independent cases at the same time for purposes of saving time and expense, such as contemplated by section 921. But it was sought to employ consolidation as a medium of getting the two independent suits united, so that the movants might, as an intervention, bind up with and in subordination to their existing litigation the independent suit of Adler, who vigorously opposed such union in any form or for any purpose. To determine whether this could properly be done involves an examination of the purposes and some of the characteristics of consolidations and of interventions, and an application of those principles to the matters in hand.

[1] Consolidation of separate and distinct causes pending in the same court is, in federal courts, authorized by section 921 of the Revised Statutes. In its conception that statute was designed for the sole purposes of saving the time of the court and the costs to the litigants. As originally enacted in 1813 (3 Stat. 21) it was one of three sections in an act dealing with costs. Under its beneficent provisions, not only may cases affecting the same property, title, res, or fund be thus brought together and tried at one time, but cases unrelated in right or liability, but connected by some common controlling issues or facts, which can conveniently be heard and determined by a jury or a chancellor at one hearing. Instances of the former character are Gila Bend Res. Co. v. Gila Water Co., 202 U. S. 270, 26 Sup. Ct. 615, 50 L. Ed. 1023; The North Star, 106 U. S. 17, 1 Sup. Ct. 41, 27 L. Ed. 91; The Dove, 91 U. S. 381, 23 L. Ed. 354; Bankers' Trust Co. v. Ry. Co., 251 Fed. 789, 164 C. C. A. 23 (C. C. A. 8th Cir.); The Rochester (D. C.) 227 Fed. 203; Gay v. Power Co. (C. C.) 190 Fed. 773; City of Boston (D. C.) 182 Fed. 171; Bird v. People's Gas and Elec. Light Co. (C. C.) 158 Fed. 903; Cole v. Ry. Co. (C. C.) 140 Fed. 944, 947; Toledo, etc., R. R. Co. v. Trust Co., 95 Fed. 497, 36 C. C. A. 155 (C. C. A. 6th Cir.); The Job T. Wilson (D. C.) 84 Fed. 204; Sioux City Terminal, etc., Co. v. Trust Co., 82 Fed. 124, 27 C. C. A. 73 (C. C. A. 8th Cir.); Park v. R. R. Co. (C. C.) 70 Fed. 641; Compton v. Jesup, 68 Fed. 263, 15 C. C. A. 397 (C. C. A. 6th Cir.). Instances of the latter are Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. 356; B. & O. Southwestern R. R. v. U. S., 220 U. S. 94, 31 Sup. Ct. 368, 55 L. Ed. 384; Conn. Mut. L. I. Co. v. Hillmon, 188 U. S. 208, 23 Sup. Ct. 294, 47 L. Ed. 446; Mutual Life Insurance Co. v. Hillmon, 145 U. S. 285, 12 Sup. Ct. 909, 36 L. Ed. 706; Hanover Fire Ins. Co. v. Kinneard, 129 U. S. 176, 9 Sup. Ct. 269, 32 L. Ed. 653; Teal v. Bilby, 123 U. S. 572, 8 Sup. Ct. 239, 31 L. Ed. 263; U. S. v. U. P. R. R. Co., 98 U. S. 569, 604, 25 L. Ed. 143; Am. Trust & Sav. Bank v. Coal Co., 165

Fed. 34, 91 C. C. A. 72 (C. C. A. 7th Cir.); Am. Window Glass Co. v. Noe, 158 Fed. 777, 86 C. C. A. 133 (C. C. A. 7th Cir.); Diggs v. R. R. Co., 156 Fed. 564, 84 C. C. A. 330 (C. C. A. 6th Cir.); Butler v. Pub. Co., 148 Fed. 821, 78 C. C. A. 511 (C. C. A. 4th Cir.); Holmes & Co. v. Ins. Co. (C. C.) 142 Fed. 863; Denver City Tramway Co. v. Norton, 141 Fed. 599, 73 C. C. A. 1 (C. C. A. 8th Cir.); Betts v. U. S., 132 Fed. 228, 65 C. C. A. 452 (C. C. A. 1st Cir.); Frank v. Geiger (C. C.) 121 Fed. 126; Times Pub. Co. v. Carlisle, 94 Fed. 762, 36 C. C. A. 475 (C. C. A. 8th Cir.); Berry v. Seawall, 65 Fed. 742, 13 C. C. A. 101 (C. C. A. 6th Cir.); Stone v. U. S., 64 Fed. 667, 12 C. C. A. 451 (C. C. A. 9th Cir.).

Consolidation is in no wise mandatory, but the advisability of such an order is based upon the practical administration of justice and the economical and convenient disposition of the cases in the trial court. It is therefore a matter of judicial discretion. But the statute has in terms limited the exercise of this discretion to cases "of a like nature or relative to the same question"; also this discretion, even within the above limits, is judicial, not arbitrary, and there must be some indication of "avoiding unnecessary costs or delay in the administration of justice," and some basis that such action is "reasonable" as required by the statute. Since consolidation of independent cases is lawful only under this statute, litigants are deprived of legal rights if their causes are consolidated outside the terms of the statute, to their injury, and the appellate courts of the United States have often examined orders of consolidation.

[10] Intervention is an entirely different character of proceeding. It is a method of practice by which one having an interest or right, which will be affected by existing litigation to which he has not been made a party, may, if he desire, by leave of court come into that litigation to protect such interest or right. Rocca v. Thompson, 223 U. S. 317, 330, 32 Sup. Ct. 207, 56 L. Ed. 453. It is not an independent action, but is ancillary and supplemental to the existing litigation (Rouse v. Letcher, 156 U. S. 47, 50, 15 Sup. Ct. 266, 39 L. Ed. 341), and must, under the limitations expressed in rule 37, "be in subordination to, and in recognition of, the propriety of the main proceeding." The purpose of intervention is to afford an opportunity for proper parties who are not necessary to the litigation to come in, if they so desire. In federal equity courts this procedure is determined by equity rule 37, which is, as to interventions:

"Any one claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding." (226 U. S. appendix, p. 11, 33 Sup. Ct. xxviii.)

Having in mind the above purposes and characteristics of consolidation and intervention, we come to consideration of their application to the order here involved. Although this order had as its main purpose and object the intervention feature, we will separately examine it as to consolidation, and then as to intervention.

If the two suits are "of a like nature, or relative to the same question," the court might simply consolidate them, unless it is clearly

and conclusively evident that such action would not avoid unnecessary costs or delay and would be unreasonable as affecting rights of some of the parties. To determine these matters requires, first, examination and comparison of the two actions; and, second, an examination of the status of each at the time the order of consolidation was made.

[2] Proceeding to the first inquiry, we are not now concerned with the sufficiency of either bill, but with the purposes of the bills and with the issues presented by those bills and the answers thereto. The Seaman amended bill is, of necessity, lengthy and involved, but its essential purposes are clear. Seaman, a holder of preferred stock in the United Railways Company, brings his bill as such for himself, and all like stockholders desiring to join, for the benefit of the company. The defendants are the company, certain directors and officers of that company, and the representatives or trustees of such as are deceased. The company is but a nominal defendant. The preferred stock held by complainant was 5 per cent. cumulative, upon which no dividends had been paid since 1910. The bill alleges continued domination of the board of directors of the company, since 1908, by certain interests engaged in manufacturing, distributing, and selling electric power; that a contract for such power was made by the company in 1908, which was followed by two later contracts for the same purpose; that all of said contracts were wrongfully and fraudulently made by the directors, for the benefit of the dominating influences and at the expense of the company, thus obligating it to pay excessive prices for its power. It also alleges actions by the directors resulting in arousing public enmity, and in extravagant, unnecessary, or unlawful expenditures of the corporate assets. These actions are particularized as the unreasonable resistance to the so-called city "mill tax"; the unreasonable and offensive resistance to valid and just claims against the company; the expenditure of a secret "slush fund" to corrupt state and city legislative action, and to obtain the commission of felonies—an instance of the last being the theft of certain referendum petitions affecting a reduced rate of taxation against the company.

The bill alleges that, but for all of these unlawful and fraudulent acts of the defendants, the company would be solvent and able to procure extensions of its franchises from the public, and to successfully finance its business and pay dividends to complainant and other preferred stockholders; that because of such acts the company is insolvent and in danger of dismemberment; that the recovery of the assets so illegally diverted by defendants would save the solvency of the company and enable it to conduct its affairs successfully; that the removal of the present board and officers, if replaced by others not similarly dominated, would restore good feeling and relations between the company and the public. It also alleges that the inimical control of the directors and officers prevents action of this character against these defendants, and that application by complainant to such officers and directors to bring such an action would be unavailing, and that therefore the company is made a defendant.

266 F.—53

The reliefs prayed are injunction to prevent the company, its officers, directors, or agents, from disposing of any of the property or removing any of the records, books, etc., of the company; to prevent the defendants from acting as directors, officers, or committeemen of the company, and from interfering with any of its property or removing any of its property, funds, or affairs; a decree that, but for the wrongful and unlawful disposition of the corporate assets by defendants, the company could have paid the annual dividends on the preferred stock; ouster of the defendant directors and officers from all control or power as to company affairs or property, except that defendant McCulloch, as an employé in the operating department, might continue to exercise such duties under the direction of "this honorable court and its agents"; accounting by defendant directors and by the defendant trustees or representatives of the deceased directors of their stewardship since election in 1908, with particular reference to personal profits or advantages to themselves, and to losses or injuries to the company permitted or caused by them, with a decree for payment of such profits and losses; appointment of a special master to report to stockholders the facts of the above accounting, and to cause to be held a stockholders' meeting, at which the power contracts would be submitted for ratification or rejection, and at which all shareholders found to have unlawfully participated in profits from such contracts be enjoined from voting, and that the decision at such meeting be given full force and effect as to the railway, its officers, directors, and shareholders; that following the decision of such meeting a receiver be appointed for the purpose (a) of obtaining from the Electric Company of Missouri, the Union Electric Light & Power Company, and any other parties, an accounting and satisfaction in reference to moneys, etc., improperly received from the company, and (b) to institute proceedings to carry into effect the above decision of the stockholders' meeting; appointment of a receiver at "any time it appears necessary to this honorable court, in order to preserve the equities of the shareholders, to preserve the assets, to prevent dismemberment, and to preserve intact the property of the railway from threatening creditors," such receiver to carry out "the orders herein prayed for"; and for general relief.

By a later supplemental bill (filed July 18, 1918) other existing directors were made defendants under allegations, that they were dominated by the same interests, had knowledge of, but had taken and would take no steps to recover, such wasted assets, or to discharge an indicted official of the company, and prayed that they also be enjoined from acting as directors, and that a special master be appointed to hold a stockholders' meeting to elect a new board of directors, and at such election defendants and all other persons found to have unlawfully participated in or permitted profits from the power contracts, or participated in the other unlawful acts referred to, be enjoined from voting.

Thus the Seaman bills are seen to be a proceeding by a dissatisfied stockholder against the corporate officers and directors, seeking accounting and satisfaction for past wrongdoing as such, the prevention

of future wrongdoing or action prejudicing the corporate welfare by the removal of such officers and directors and election of a new board, and escape from onerous contracts fraudulently consummated by such persons. If necessary to protect the corporation from harm during this proceeding, a receiver is sought. The other prayers for receiver are purely as an aid in executing a decree found in complainant's favor.

The Adler bill was by a bondholder under a junior mortgage. It alleges default in payment of a senior mortgage on part of the railway system, insolvency of defendants, threatened foreclosure or improper increase of indebtedness prior to complainant's lien, default under another prior mortgage and danger of foreclosure, danger of dismemberment of a harmonious street railway system, resulting in large loss in value in the security behind complainant's bonds and injury to the public. The prayer is for a receiver, a marshaling of assets, and a declaration of rights of respective lien holders and creditors.

A comparison of the purposes of the two bills reveals a common question, to wit, appointment of a receiver for an insolvent street railway corporation, to prevent dismemberment of its system by various creditors and lien claimants. The consolidation, however, was not for the purpose of having both cases heard upon this point at the same time. The consolidation order was not made until 12 days after the appointment, in the Adler case, of a receiver who took immediate possession.

[3] The propriety of any consolidation order must be determined by the situation of the two cases at the time that order was made. Nor can the attempted reservation in the receivership order in the Adler case of the "determination of the consolidation of this and the original suit of John W. Seaman" avail to alter the proposition that the validity of the order of consolidation must be determined by the situation at the time the order was made. That situation was as follows: Under the Adler bill a receiver was in possession, with the broad general powers of a receiver, who was to preserve, collect, and marshal the entire assets of the company, conduct its active buisness as a street railway system, and make such provision for the care of its creditors of all classes as the court might direct.

The appointment of a receiver for this company materially affected the status of the Seaman litigation as to consolidation. The Seaman bill had sought three main and one contingent results, which were, recovery of assets wrongfully wasted by certain of the defendant officers and directors; submission of the power contracts and replacement of existing directors and officers; and, if dismemberment threatened during the litigation, a receiver to preserve the property in its integrity. The broadly empowered receiver appointed in the Adler case abundantly met the need for a receiver in the Seaman suit. This appointment also vitally affected the sought replacement of the company directors and officers, because it suspended the possibility of such relief during the receivership and made the granting of such relief even after the termination of the receivership entirely dependent

upon the result of the receivership. The same statement applies to the executory portion of the power contracts, since the receiver may adopt them or not as seems best for the estate (Dushane v. Beall, 161 U. S. 513, 515, 16 Sup. Ct. 637, 40 L. Ed. 791; U. S. Trust Co. v. Ry. Co., 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085) during the receivership, and in fact is given, in the order appointing him, a specified time within which to adopt or reject all contracts. How did the Adler receivership affect the remaining object of the Seaman bill, to wit, the recovery of wasted assets of the company?

Officers and directors of a corporation are civilly liable for its assets, which they have illegally and fraudulently dissipated. This liability is to the corporation, the assets of which have been thus unlawfully dissipated, and to it alone. It is only when the duly constituted corporate authorities will not enforce that liability for the corporation that its stockholders can seek to do so. Such a stockholders' suit is based upon the refusal of the corporation (through its proper officials) to act, and it is for the sole benefit of the corporation. All sums recovered therein go to the corporation, diminished only by the legitimate expenses of such litigation. Such was the character of the Seaman bill as to this portion of the relief sought therein. When the receiver was appointed, he acquired, under the broad terms of his appointment, the rights of the corporation to prosecute such character of suit for waste. In Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815, while a state court receiver was in control of corporate property and business, certain stockholders brought their bill in the federal court against the corporate officers for dissipation of corporate assets. The bill made the corporation a defendant, and recited the refusal of the state court to permit the receiver to bring such action or to be made a defendant therein. The Supreme Court affirmed the ruling of the trial court, sustaining a demurrer to the bill, because the receiver was not made a party. The court said:

"The right to maintain a suit against the officers of a corporation for fraudulent misappropriation of its property is a right of the corporation, and it is only when the corporation will not bring the suit that it can be brought by one or more stockholders in behalf of all. Hawes v. Oakland, 104 U. S. 450. The suit, when brought by stockholders, is still a suit to enforce a right of the corporation, and to recover a sum of money due to the corporation; and the corporation is a necessary party, in order that it may be bound by the judgment. Davenport v. Dows, 18 Wall. 626. If the corporation becomes insolvent, and a receiver of all its estate and effects is appointed by a court of competent jurisdiction, the right to enforce this and all other rights of property of the corporation vests in the receiver, and he is the proper party to bring suit, and, if he does not himself sue, should properly be made a defendant to any suit by stockholders in the right of the corporation."

It is thus clear that the receiver in the Adler bill would have been a necessary party to any action such as Seaman brought, had Seaman commenced his action after appointment of the receiver in the Adler suit. The circumstance that such suit was pending when the Adler receiver was appointed cannot alter or affect this rule. The receiver is not a party to that suit. He can become such only by an order of the court (Wilder v. City, 87 Fed. 843, 31 C. C. A. 249 [C. C. A.

5th Circuit] ; 22 Standard Enc. of Prac. 434; High on Receivers [4th Ed.] § 258), although he might be made so by such an order (National Electric Signaling Co. v. Telefunken Wireless Teleg. Co., 208 Fed. 679, 698, 125 C. C. A. 647). No application by the receiver or by any one else to have him made party to the Seaman suit has been ruled upon or even filed in the Adler suit. Therefore, as to this proceeding for unlawful waste brought by Seaman, the status of the two cases at the time of the order of consolidation was that a stockholder had a suit against certain corporate directors for unlawful waste of corporate funds, and in another proceeding a creditor had obtained a general receivership of that corporation. The only place where the two cases in any wise touch is that, if Seaman can legally continue the prosecution of his suit after the qualification of the Adler receiver, any sum recovered by him would be for the benefit of the corporation, and would pass as assets thereof to the receiver. This is no basis for any consolidation of the two cases. No economy of expense or of time, and no convenience in the conduct of the suits, can arise from such combination. If the receiver is not made a party to the Seaman suit, that suit is outside the scope of the Adler receivership, which is in no wise affected thereby, unless and until Seaman successfully terminates his action and has a fund to turn over to the receiver. The receiver has not been made a party, and as yet Seaman has no such fund; therefore there was no ground to connect the suits, and no proper purpose is served thereby.

There is a clear way in which the two suits may become related, and it is the only way. That is by making the Adler receiver a party to the Seaman suit. The court can order him to intervene as party plaintiff and promote the prosecution of the suit (National Electric Signaling Co. v. Telefunken Wireless Teleg. Co., supra), or it can permit him to be made a party defendant, so that he will be bound by the result of the suit (Porter v. Sabin, supra). The preceding statement reveals that the only true relation of the Seaman suit is as subordinate to and in aid of the receivership, when once the receiver becomes a party thereto, but not before. It would then be like any other independent suit brought by the receiver to recover and collect some of the assets of the corporation. But even then the action would be ancillary in its nature, presenting no reason for consolidation with the main suit, and not properly susceptible of being so consolidated. So much the more was the consolidation improper, and without the power of the court under the statute, when the actual status of the two cases at the time of consolidation, as above outlined, is considered.

[4] This order, however, was not one purely of consolidation. It was more substantially one of intervention. It required, not that the cases should be heard together, but that the Adler suit should be regarded as an intervention in the Seaman suit, and that the causes should proceed under the title of the latter action. " Interventions are, in their nature, voluntary. [sup]"They are the avenues by which proper parties may enter litigation and present therein their rights to some title, property, res, or fund involved therein.[sup]" None of the parties to

the Adler suit desired to be made parties to the Seaman litigation, and at the date of consolidation no title, property, res, or fund was therein involved, wherein an intervention by any of them could find place. On the contrary, they bitterly opposed any union of the two actions. Over vigorous protest they saw their action made an intervention in the Seaman suit. We know of no instance of an order forcing a pure intervention by unwilling parties, and we think that such order cannot be made.

Nor does the circumstance that this intervention was coupled with consolidation avail. Although the result of consolidation is merely to try cases together, necessitating separate verdicts and judgments or separate decrees (Mutual Life Insurance Co. v. Hillmon, 145 U. S. 285, 12 Sup. Ct. 909, 36 L. Ed. 706; Toledo, etc., R. R. Co. v. Trust Co., 95 Fed. 497, 36 C. C. A. 155 [C. C. A. 6th Circuit, opinion by Judge Lurton]), yet it is true that sometimes independent suits bear a relation to each other, such that, when they are properly consolidated, the several controversies assume certain natural attitudes toward each other, such as "in the nature of" a cross-bill or intervention, and it is then convenient to so regard them in the subsequent conduct of the litigation (Sioux City Terminal R. R. and Warehouse Co. v. Trust Co., 82 Fed. 124, 27 C. C. A. 73 [C. C. A. 8th Circuit]; Lant v. Kinne, 75 Fed. 636, 637, 21 C. C. A. 466 [C. C. A. 6th Circuit]; Central Trust Co. v. Bridges, 57 Fed. 753, 6 C. C. A. 539 [C. C. A. 6th Circuit]; McBee v. Ry. Co. [C. C.] 48 Fed. 243, 245); but this is purely a rule of convenience, and does not result in actually making such parties defendants or interveners in the other suit. No such situation of convenience appears here. Adler's suit to collect, preserve, and marshal the entire assets of the company, to determine the rights of all creditors, and, in the meanwhile, to conduct the entire business of the company, cannot in any sense be considered an intervention in Seaman's suit to recover certain wasted assets and to escape certain alleged burdensome operating contracts. The order of intervention-consolidation was improvident, and cannot withstand the attack here made.

[5] Another point raised on this appeal is as to the propriety of the appointment of a receiver in the Seaman suit. In view of the status of this entire litigation at the time that order was made, we think that it was erroneous. At that time a general receiver, with very extensive and complete powers, was possessing, protecting, and collecting the property, assets, and rights of the company, and operating its business. Therefore there was no necessity of another receivership, or an extension of that receivership to the Seaman suit. Bird v. People's Gas & Electric Light Co. (C. C.) 158 Fed. 903; Fernald v. Tel. Co., 31 Wash. 219, 71 Pac. 731. Nothing could properly be obtained through a subsequent appointment in or extension to the Seaman suit which could not be through the receiver already acting in the Adler suit. Upon qualification, the Adler receiver became a necessary party to the Seaman litigation, because he succeeded to the rights of the corporation to pursue its officers and directors for maladministration. Such a suit by the receiver would be in course of

collecting the corporation assets, and would be ancillary to the main action. Pope v. Railway Co., 173 U. S. 573, 19 Sup. Ct. 500, 43 L. Ed. 814; White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67; Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815; In re Tyler, 149 U. S. 164, 181, 13 Sup. Ct. 785, 37 L. Ed. 689; 34 Cyc. 381. Such character of suit assumes no higher standing because brought by a stockholder and pending at the time the receiver was appointed. No good result, but only confusion, could follow by extension of the receivership to the Seaman suit.

Where no good purpose can be served by appointment of a receiver, it will be refused, and the same principle is enforced where a receiver has already been appointed in another suit. Bird v. Light Co. (C. C.) 158 Fed. 903. Also courts of equity are not inclined to grant, much less extend, a receivership, where the main purpose is or result would be to take up litigation against corporate officials (Clark v. Oil Co., 105 Fed. 787, 45 C. C. A. 53 [C. C. A. 7th Circuit]; Hallenborg v. Copper Co., 8 Ariz. 329, 74 Pac. 1052; Empire Hotel Co. v. Main, 98 Ga. 176, 25 S. E. 413; Marcuse v. Gin Co., 52 La. Ann. 1383, 27 South. 846; Richardson v. Trunk Co., 181 Mass. 580, 64 N. E. 400; Miller v. Kitchen, 73 Neb. 711, 103 N. W. 297; People's Investment Co. v. Crawford [Tex. Civ. App.] 45 S. W. 738), although this has been done (Du Puy v. Terminal Co., 82 Md. 408, 33 Atl. 889, 34 Atl. 910; Hazzard v. Credit Mobilier, Fed. Cas. No. 6,289). To repeat, the proper procedure was, by leave of court, to bring the receiver into the Seaman suit as a party, so that the receiver may prosecute the suit, if deemed advisable by the court, or may, as party defendant, be bound by the adjudication. While it has been questioned whether a stockholder could prosecute such a suit pending a receivership (Kelly v. Dolan, 233 Fed. 635, 147 C. C. A. 443), we see no reason why such should not be permitted, if leave be secured from the court appointing the receiver to join him as defendant, and this seems to be the effect of the decision in Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815, and to accord with justice (Marcuse v. Gin Co., 52 La. Ann. 1383, 1394, 27 South. 846; Brinckerhoff v. Bostwick, 88 N. Y. 52; Id., 23 Hun, 237; Id., 99 N. Y. 185, 1 N. E. 663). Unless such suit by a stockholder would unreasonably prolong or otherwise injuriously affect the receivership, we see no reason why the stockholder should not be permitted, at his own risk and expense, so to sue and join the receiver as a party. The practical objections which might be urged against such a course, such as expensive delay in terminating the receivership, can be amply dealt with in connection with the consideration of the application to make the receiver a party.

[6] Appellees earnestly urge a motion to dismiss this appeal, on the ground that the order appealed from was purely interlocutory and of no such finality as to furnish any basis for an appeal. Consideration of this contention has been postponed until after a discussion of the merits of the appeal, since that discussion would reveal the true character of the order in question. It is said that the gist of the appeal is the order of consolidation-intervention, and not that part of the order appointing a receiver in the Seaman case. A consideration

of the contention, even from that point of view, is of no avail to appellees. As a rule an order purely of consolidation is not appealable, although we do not care to say it might never be. The reason, as stated in Toledo, etc., R. R. Co. v. Trust Co., 95 Fed. 497, 506, 36 C. C. A. 155, 164, by Judge Lurton, is that in an order purely of consolidation—

"each record is that of an independent suit, except in so far as the evidence in one is, by order of the court, treated as evidence in both. The consolidation does not change the rules of equity pleading, nor the rights of the parties, as those rights must still turn on the pleadings, proofs, and proceedings in their respective suits."

Such is not the character of this order, nor is such its innocuous effect. It does not leave the Adler suit a separate, independent action, but subordinates it as an intervention in the Seaman action. It does affect the rights of Adler in his litigation. It takes from him the control of his own litigation. It makes his suit dependent upon the success of other litigation, which he may deem ill-advised and ill-founded. It deprives him of all opportunity to question the litigation into which he is unwillingly injected. He cannot object to the receivership being burdened with the costs and delay of this litigation, in the success of which he has no faith, but must helplessly and silently see settlement of his claim delayed and, as he may think, imperiled by dissipation of the funds, to which he is looking for payment, in litigation which he may believe cannot succeed. Except as to emergency orders, every party to a general receivership suit has a right, which is important, to be seasonably heard by the court in favor of or opposition to any action of the receiver materially affecting the general assets or policy of the receivership. The value of his interests depends upon the proper conduct of the receivership, and he may present his views to the court controlling the receiver. But here no application to have the receiver made a party to the Seaman suit has been made, and no opportunity has or will ever be afforded Adler to protest such action, although Seaman is attempting to gain indirectly, through this order, the entire benefit, if not, indeed, more than he could secure by an order on the receiver in the Adler suit to become a party to the Seaman suit. Certainly Adler cannot be unwillingly deprived of these rights of the ordinary litigant without an opportunity to have such action reviewed, and what practical good would such review accomplish after final decree in the Seaman suit? The situation has in it much which is, in effect, analogous to that in Bankers Trust Co. v. Railway Co., 251 Fed. 789, 164 C. C. A. 23, decided in this court. We think the right of appeal clear.

An additional controlling consideration is that this appeal was also from that portion of the order appointing a receiver in the Seaman case. This appointment of a receiver was under the statute (Judicial Code, § 129; Compiled Stat. § 1121) an appealable order. The contention of appellees that Adler cannot complain of this appointment, because he himself sought a receivership, cannot prevail. There was no order of vacation of the receivership in the Adler case, but that receivership was virtually extended to the Seaman suit. This ex-

tension was, however, made with conditions that made it much more. It had the practical effect of throwing upon the receiver the conduct of the Seaman suit, without affording the parties to the Adler suit an opportunity to object to such a burden, or it created an anomalous situation of a general receiver with broad powers, in a stockholder's suit for official malfeasance in which the receiver was not a party. Such an order was improper, was harmful to Adler's rights as a litigant, was no such result as he sought or desired, and was therefore subject to attack by him and to review here.

[7] It is also contended that through the prayer for a receiver in the Seaman case the court in that case acquired exclusive jurisdiction of the res of the litigation, even though not actually in the possession of the court, and therefore that, if Adler desired a receivership of the same res, he must come into that suit as an intervener. We cannot accept this definition. Under the Seaman bill a receivership was contingent and incidental. That litigation might easily have proceeded to finality, and have failed, or have accomplished its entire purpose without any such receiver being appointed. The contingency upon which that prayer in the Seaman suit was predicated was one not resting on conditions existing at the time that bill or the amended and supplemental bills were filed, but upon what some creditor *might* attempt to do for the protection of his own rights during the period of that litigation. If such creditors, to enforce their rights, must come into the Seaman litigation, they must do so by intervention. If they intervene, they cannot challenge the propriety of the main litigation, but must accept it. Equity rule 37; Jennings v. Smith (D. C.) 242 Fed. 561, 564; Seaboard Air Line v. Trust Co., 125 Ga. 463, 465, 54 S. E. 138; Charleston, etc., Ry. v. Pope, 122 Ga. 577, 50 S. E. 374. Take, in connection with these rules of law, the further rule that a receiver, if appointed, would be a necessary party to a suit by a stockholder against corporate directors and officers (Porter v. Sabin, supra), and the result of the contention urged is as follows:

No receiver may ever be appointed under the allegations of the Seaman bill, but if any creditor, during the period of the long drawn out Seaman litigation, deems it essential to his interests to have a general receiver appointed, he can secure such only by accepting the Seaman litigation, subordinating his own interests and litigation thereto, and waiving all objection thereto, although he may be convinced that such suit will be fruitless, and although he may be convinced that some of its objects (such as renunciation of the power contracts) would be to the detriment of his interests. Certainly no such result can receive approval in a court of equity. Again, as has been said above, if a general receiver of a corporation is appointed, he succeeds the corporation as to causes of action against its directors and officers for official malfeasance. But that does not mean that he is compelled to suffer delay in winding up the receivership, or to risk the assets of the estate in his charge in litigating such claims. The receiver, under the control of the court, may deem it wise to ignore such claims as too doubtful or as unfounded, in which case the receivership would proceed without such litigation. Also, where the stockholder's suit, as

here, involves existing contracts with the corporation, the receiver, under the court, may wish to avail himself of them as in full force. Yet if no receiver can be appointed, except in and subject to the stockholder's suit, he is effectually deprived of all such freedom of action. In short, the effect of appellee's contention, when thus developed, is that a dissatisfied stockholder, after refusal of the officers and directors, and perhaps a majority in amount of the stockholders, of an insolvent corporation to sue its directors and officers for claimed malfeasance in office, can himself institute such suit, and by praying contingently for a receiver prevent all creditors from protecting their rights against the corporation through a receivership, except at the penalty of having the receiver take up the burden and expense of the stockholder's suit. Yet the same stockholder could not have compelled the corporation, out of the assets from which the subsequent receiver must conduct the litigation, to undertake such a burden. We cannot believe that a stockholder has any such control over the rights and remedies of the creditors or the receiver of a corporation. The necessary conclusion is that the creditor could, as here, bring his bill for a receiver independently of the stockholder's suit.

[8] It is also contended that all proceedings in the Adler suit must abate, pending determination of the issue that it was filed through fraud and collusion. The Adler bill was filed April 11, 1919, answered the same day, followed by appointment of a receiver therein April 12, 1919, who took immediate possession. April 16, 1919, Henry F. Mueller et al. filed petition for leave to file an intervening petition. May 6, 1919, leave was granted as of April 16th, the day of submission as shown in the order granting leave. May 6, 1919, similar leave was granted E. A. Laughlin et al., as of April 12, 1919, the day of submission as shown by the order granting leave, and petition in intervention was filed May 7th as of April 12th; no petition for such leave appearing in the record here. The petitions of intervention are similar in effect. They charge that the bill was collusive; that there is no "matter in controversy" between the parties to the bill; that there is lack of jurisdiction, because of absence of diverse citizenship; that there was pending in the Seaman suit a proceeding before the special master involving the same controversy and praying the same relief as the bill; that the proper procedure would be for Adler to intervene in the Seaman suit; that the Adler proceeding could form no foundation for any valid appointment of a receiver therein, but would only serve to thwart, defeat, or cripple the Seaman litigation, result in delay pending an appeal, with the ultimate result of overturning the Adler receivership and requiring appointment of a new receiver in the Seaman suit; that the answer of the Railways Company in the Adler suit is a confession of insolvency and emergency which requires appointment of a receiver in the Seaman suit.

In view of what is said elsewhere in this opinion, and of the present status of this entire litigation, the only point deserving special notice it that relating to the jurisdiction. The lack of jurisdiction is not apparent on the face of the bill, but is based upon allegations that

Adler is not the real owner of the bonds claimed, but that they belong to one Tilles, a resident of the same state as defendants in that suit. The verity of these allegations is not a point included in this appeal, and so far as we are advised has not been determined in the trial court—possibly this has not been done because of the possible effect of the consolidation-intervention order of April 24, 1919. The point relating to jurisdiction here presented is that a challenge of the jurisdiction of the court by interveners should suspend or abate any action in the case until that question is determined. Although the orders permitting these interventions state that such petitions were submitted to the court April 12th and 16th, respectively, yet the order and actual filing were not until May 6th and 7th, while the receiver had been appointed April 12th and had entered into immediate possession. While filings of pleadings and papers and orders permitting such may often be related back, yet such, in the nature of things, cannot be done for purposes of abatement. What has happened up to the time of the actual making of the order cannot be abated by a relation back of the order to an earlier date. Up to the making of the order herein the receivership had been in force for almost a month, during which time the assets, property, and active operation of the corporation business had been in the receiver—part of the time solely in the Adler suit, and the remainder in the consolidated cause. The receivership has since continued for many months, and is now in force. In the face of what the court did in permitting continuation of the receivership, and bearing in mind the effect of an order now suspending or abating the receivership in the Adler suit after the receiver has been in control of a large property and actively operating it, we think no force should be given this contention.

[9] Another point of attack is upon the appointment of Charles W. Bates as attorney for the receiver, on the ground that he was of counsel for Seaman at the time of such appointment. The attorney for a receiver is an officer of the court, chosen by the court, and must exercise the duties of his position impartially, with an eye single for the proper and successful conduct of the receivership. The court can at any time replace counsel whose impartiality or usefulness becomes doubtful, and abuse of this discretion of appointment may be remedied by appellate courts. Counsel for all parties, in argument, conceded the high personal character and professional ability of Mr. Bates. The trial court, which must conduct this receivership, is presumed to have been familiar with his qualifications and impressed with the conviction that his services would be impartial and efficient. The Seaman litigation was hardly past the preliminary stage when Mr. Bates withdrew as counsel, upon his appointment as counsel for the receiver. We deem the objection to his appointment ill-founded. Cases analogous in principle are Shainwald v. Lewis (D. C.) 8 Fed. 878, affirmed (C. C.) 48 Fed. 492, and United States v. Church of Jesus Christ, 6 Utah, 9, 43, 21 Pac. 503, 524, cited in a note to 34 Cyc. 292, 293.

As there has never been any vacation of the Adler receivership the vacation of the consolidation order will not affect the acts of the

receiver done in the due administration of the property. Nor will it affect the appointment or acts of the master and attorney for the receiver done in such administration.

The order is that the order of April 24, 1919, as to consolidation of the Seaman and Adler suits, declaring the Adler action an intervention in the Seaman suit, and appointing or extending the receivership to the Seaman suit, be set aside and vacated, with costs of this appeal taxed against the appellees.